No. 24-20164

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

ALBERTO RAMOS,

*Plaintiff - Appellee*

v.

SCOTT ERWIN; JENNIFER GILBREATH; HALLIE SMITH;
FREDERICK MORRISON; GINO DAGO,

*Defendants - Appellants*

---

On appeal from Civil Action No. 4:23-CV-02517 in the United States District
Court for the Southern District of Texas, Houston Division

---

## Brief of Appellants

---

ARTURO G. MICHEL
City Attorney

SUZANNE R. CHAUVIN
Chief, General Litigation Section

Robert W. Higgason
Senior Assistant City Attorney
SBN: 09590800
CITY OF HOUSTON LEGAL
DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone:  832.393.6481
Facsimile:   832.393.6259
robert.higgason@houstontx.gov

*Attorneys for Defendants - Appellants*

No. 24-20164

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

ALBERTO RAMOS,

*Plaintiff - Appellee*

v.

SCOTT ERWIN; JENNIFER GILBREATH; HALLIE SMITH;
FREDERICK MORRISON; GINO DAGO,

*Defendants - Appellants*

---

On appeal from Civil Action No. 4:23-CV-02517 in the United States District
Court for the Southern District of Texas, Houston Division

---

## Certificate of Interested Persons

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal. The judge below was the Honorable Keith P. Ellison.

| Appellants: | Scott Irwin |
| | Jennifer Gilbreath |
| | Hallie Smith |
| | Frederick Morrison |
| | Gino Dago |

Trial Counsel for Appellants:    Christy L. Martin
                                 City of Houston Legal Department

Appellate Counsel for Appellants:  Robert W. Higgason
                                   Christy L. Martin
                                   City of Houston Legal Department

Appellee:    Alberto Ramos

Trial and Appellate Counsel for    Kiah Duggins
Appellee:                          Brittany Nicole Francis
                                   Civil Rights Corps
                                   Caitlin A. Halpern
                                   Gibbs & Bruns, L.L.P.


 */s / Robert W. Higgason*
Robert W. Higgason

*Attorney for Defendants – Appellants*

**Statement Regarding Oral Argument**

The law that governs this case is clearly established and the facts are not novel or complex. It could be, however, that oral argument could assist the Court in sifting through Ramos's claims and how the law applies to them.

# Table of Contents

**Page**

Certificate of Interested Persons........................................................................ii

Statement Regarding Oral Argument ............................................................. iv

Table of Contents ....................................................................................... v

Table of Authorities ................................................................................. viii

Jurisdictional Statement ............................................................................... 1

Statement of the Issues ................................................................................ 2

Statement of the Case .................................................................................. 3

I.    Facts relevant to the issues submitted for review ................................... 3

II.   Procedural history.................................................................................. 4

III.  Rulings presented for review.................................................................. 7

Summary of the Argument ........................................................................... 8

Argument...................................................................................................... 9

I.    Seminal Authority.................................................................................. 9

      A.    12(b)(6) standard of review........................................................... 9

      B.    Qualified immunity ................................................................... 13

      C.    The probable cause standard for arrest and the reasonable
            suspicion standard for an investigatory stop.............................. 17

      D.    Independent intermediary doctrine............................................ 22

      E.    *Heck* Doctrine ......................................................................... 24

      F.    Use of force ................................................................................ 26

II.   Ramos's false arrest claims are barred both by *Heck* and by the
      independent intermediary doctrine. ...................................................... 28

A.     Ramos's false arrest claims against Officers Irwin and Gilbreath are barred by *Heck*. ..................................................... 28

B.     Ramos's false arrest claims against Officers Irwin and Gilbreath are barred by the independent intermediary doctrine. ................................................................................... 29

C.     Ramos's arrest was not objectively unreasonable. ...................... 32

D.     No clearly established law prohibited the Officers' conduct. ........ 36

III.    Ramos did not allege facts that would overcome Irwin's and Gilbreath's qualified immunity for Ramos's claim of excessive force in "tackling" him or in sitting on him. ................................................. 36

A.     Not objectively unreasonable ..................................................... 36

1.     Injuries were de minimis .................................................. 36

B.     No clearly established law ........................................................... 37

IV.    Ramos cites no authority for the proposition that sitting on a clearly intoxicated suspect in an assault case to get him in handcuffs is a clearly established constitutional violation. ......................................... 38

V.     Ramos did not plead facts that would overcome the qualified immunity of Dago, Smith, and Morrison  as to the claim of excessive force in "hogtying" him. ...................................................................... 40

A.     Not objectively unreasonable ..................................................... 40

1.     Officers' motions demonstrated that use of leg restraints was not objectively unreasonable because Ramos' alleged injuries were de minimis. ...................................... 40

2.     Ramos failed to identify allegations of injuries that were more than de minimis. ...................................................... 41

3.     The district court erred in holding that Ramos alleged injuries that were more than de minimis. .......................... 42

B.     No clearly established law ........................................................... 43

1.   Officers' motions demonstrated that there is no clearly-established law prohibiting use of leg restraints where the suspect remains unsubdued. ....................................... 43

   a)   No United States Supreme Court precedent gives fair notice. .............................................................. 44

   b)   There is no materially similar precedent because Ramos does not allege positional asphyxia. ............. 44

   c)   *Gutierrez* did not *hold* that there was a constitutional violation but that the court of appeals lacked jurisdiction. ..................................... 45

2.   Ramos's responses failed to present materially similar law holding a constitutional violation occurred. ............... 45

3.   The district court erred in considering Fifth Circuit precedent at a high level of generality. ............................. 46

Prayer for Relief ....................................................................... 48

Certificate of Service .................................................................. 50

Certificate of Compliance ........................................................... 50

# Table of Authorities

**Page(s)**

## Cases

*Aguirre v. City of San Antonio,*
  995 F.3d 395 (5th Cir. 2021) ............................................................46, 47

*Alabama v. White,*
  496 U.S. 325 (1990) .................................................................... 33

*Albright v. Oliver,*
  510 U.S. 266 (1994) .................................................................... 19

*Alexander v. City of Round Rock,*
  854 F.3d 298 (5th Cir. 2017) ....................................................... 28

*Anderson v. Creighton,*
  483 U.S. 635 (1987) .................................................................... 21

*Anokwuru v. City of Houston,*
  990 F.3d 956 (5th Cir.  2021)............................................................23, 31

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.,*
  300 F.3d 620 (5th Cir. 2001) ....................................................... 12

*Arnold v. Williams,*
  979 F.3d 262 (5th Cir. 2020) ....................................................... 11

*Arthur v. Officer Mohammed Bellahna,*
  CV H-18-2777, 2020 WL 6292453 (S.D. Tex. Oct. 27, 2020) ................... 27

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .........................................................passim

*Atwater v. City of Lago Vista,*
  532 U.S. 318 (2001) .................................................................... 18

*Aucoin v. Cupil,*
  958 F.3d 379 (5th Cir. 2020) ............................................................25, 26

*Backe v. LeBlanc,*
 691 F.3d 645 (5th Cir. 2012) ............................................................14, 15

*Bazan ex rel. Bazan v. Hidalgo County,*
 246 F.3d 481 (5th Cir. 2001) ................................................................. 15

*Behrens v. Pelletier,*
 516 U.S. 299 (1996) ............................................................................... 13

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ................................................................ 9, 10, 11, 12

*Blackburn v. City of Marshall,*
 42 F.3d 925 (5th Cir. 1995) .................................................................... 12

*Bradford v. Law Firm of Gauthier, Houghtaling & Williams, L.L.P.,*
 696 F. App'x 691 (5th Cir. 2017) (per curiam) ......................................... 9

*Brown v. Lyford,*
 243 F.3d 185 (5th Cir. 2001) .................................................... 17, 19, 21

*Buehler v. City of Austin/Austin Police Dep't,*
 824 F.3d 548 (5th Cir. 2016) ...................................................22, 23, 30, 31

*Buehler v. Dear,*
 27 F.4th 969 (5th Cir. 2022) ................................................................... 28

*Bush v. Strain,*
 513 F.3d 492 (5th Cir. 2008) .................................................................. 26

*C.H. v. Rankin Cnty. Sch. Dist.,*
 415 F. App'x 541 (5th Cir. 2011)........................................................17, 18

*Car Carriers, Inc. v. Ford Motor Co.,*
 745 F.2d 1101 (7th Cir.1984).................................................................. 33

*Carswell v. Camp,*
 54 F.4th 307 (5th Cir. 2022) ............................................................14, 15

*Castellano v. Fragozo,*
 352 F.3d 939 (5th Cir. 2003) (en banc)...............................................23, 31

*Cloud v. Stone,*
    993 F.3d 379 (5th Cir. 2021) .................................................... 39

*Club Retro, L.L.C. v. Hilton,*
    568 F.3d 181 (5th Cir. 2009) ........................................ 14, 19, 21

*Cole v. Carson,*
    935 F.3d 444.................................................................... 16

*Collier v. Montgomery,*
    569 F.3d 214 (5th Cir. 2009) .................................................... 39

*Collins v. Ainsworth,*
    382 F.3d 529 (5th Cir. 2004) .................................................... 15

*County of Los Angeles, Cal. v. Mendez,*
    137 S. Ct. 1539 (2017).......................................................... 28

*Cousin v. Small,*
    325 F.3d 627 (5th Cir. 2003) .................................................... 9

*Cuadra v. Houston Indep. Sch. Dist.,*
    626 F.3d 808 (5th Cir. 2010) ........................................ 17, 22, 30

*D.C. v. Wesby,*
    583 U.S. 48 (2018) ......................................................21, 44

*Darden v. City of Fort Worth,*
    880 F.3d 722 (5th Cir. 2018) .................................................... 16

*DeLeon v. City of Corpus Christi,*
    488 F.3d 649 (5th Cir. 2007) ...........................................passim

*Deville v. Marcantel,*
    567 F.3d 156 (5th Cir. 2009) ........................................ 17, 18, 29

*Duckett v. City of Cedar Park,*
    950 F.2d 272 (5th Cir. 1992)..................................................... 18

*Espinal v. City of Houston,*
    96 F.4th 741 (5th Cir. 2024) .................................................... 31

*Fernandez-Montes v. Allied Pilots Ass'n.*,
   987 F.2d 278 (5th Cir. 1993) ................................................... 12

*Freeman v. Gore*,
   483 F.3d 404 (5th Cir. 2007) ............................................37, 41

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) ................................................... 11

*Galvan v. City of San Antonio*,
   435 F. App'x 309 (5th Cir. 2010) ............................................ 42

*Gentilello v. Rege*,
   627 F.3d 540 (5th Cir. 2010) ................................................... 11

*Gerstein v. Pugh*,
   420 U.S. 103 (1975) ............................................................... 19

*Glenn v. City of Tyler*,
   242 F.3d 307 (5th Cir. 2001) ............................................37, 42

*Gliatta v. Jones*,
   96 F. App'x 249 (5th Cir. 2004) .............................................. 21

*Goode v. Baggett*,
   811 F. App'x 227 (5th Cir. 2020) .......................................46, 47

*Graham v. Connor*,
   490 U.S. 386 (1989) ............................................................... 27

*Gray v. White*,
   18 F.4th 463 (5th Cir. 2021) ................................................... 26

*Gutierrez v. City of San Antonio*,
   139 F.3d 441 (5th Cir. 1998) .................................43, 45, 46, 47

*Hale v. King*,
   642 F.3d 492 (5th Cir. 2011) ....................................... 11, 12, 17

*Hall v. Trochessett*,
   ___ F4th ___, 2024 WL 3063109 (5th Cir. June 20, 2024)........17, 18, 20, 22

*Hanks v. Rogers*,
    853 F.3d 738 (5th Cir. 2017) ..................................................... 38

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ...........................................................13, 21

*Heck v. Humphrey*,
    512 U.S. 477 (1994) ........................................................passim

*Henderson v. Harris County, Tex.*,
    51 F.4th 125 (5th Cir. 2022) (per curiam)................................. 27

*Hogan v. Cunningham*,
    722 F.3d 725 (5th Cir. 2013) ..................................................... 20

*Hoog-Watson v. Guadalupe County., Tex.*,
    591 F.3d 431 (5th Cir. 2009) ...............................................25, 29

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    761 F. Supp. 2d 504 (S.D. Tex. 2011)..................................... 33

*Jackson v. Procunier*,
    789 F.2d 307 (5th Cir. 1986) ..................................................... 9

*Johnston v. City of Houston*,
    14 F.3d 1056 (5th Cir. 1994) ..................................................... 18

*Jordan v. Brumfield*,
    687 F. App'x 408 (5th Cir. 2017)............................................. 29

*Joseph v. Bartlett*,
    981 F.3d 319 (5th Cir. 2020) ..................................................... 16

*Kokesh v. Curlee*,
    14 F.4th 382 (5th Cir. 2021) ..................................................... 13

*Leal v. McHugh*,
    731 F.3d 405 (5th Cir. 2013) ..................................................... 10

*Mangieri v. Clifton*,
    29 F.3d 1012 (5th Cir. 1994) ..................................................... 18

*McLin v. Ard*,
   866 F.3d 682 (5th Cir. 2017) ..............................................................23, 31

*Md. Manor Assocs. v. City of Houston*,
   816 F. Supp. 2d 394 (S.D. Tex. 2011)...................................................... 11

*Mendenhall v. Riser*,
   213 F.3d 226 (5th Cir. 2000) ................................................................... 21

*Michigan v. DeFillippo*,
   443 U.S. 31 (1979) ................................................................................... 20

*Mitchell v. Forsyth*,
   427 U.S. 511 (1985) ................................................................................... 1

*Montoya v. FedEx Ground Package Sys., Inc.*,
   614 F.3d 145 (5th Cir. 2010) .............................................................10, 12

*Morgan v. Swanson*,
   659 F.3d 359 (5th Cir. 2011) (en banc)...............................................13, 15

*Morin v. Caire*,
   77 F.3d 116 (5th Cir. 1996) ....................................................................... 9

*Morris v. Mekdessie*,
   768 F. App'x 299 (5th Cir. 2019) (unpublished) ..................................... 25

*Nerio v. Evans*,
   974 F.3d 571 (5th Cir. 2020) ................................................................... 45

*Norris v. Hearst Tr.*,
   500 F.3d 454 (5th Cir. 2007) ................................................................... 11

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ................................................................................. 14

*Petersen v. Johnson*,
   57 F.4th 225 (5th Cir. 2023) ...............................................................19, 21

*Pierson v. Ray*,
   386 U.S. 547 (1967) ................................................................................. 18

*Poole v. City of Shreveport*,
13 F.4th 420 (5th Cir. 2021) ........................................................ 1

*Poullard v. Gateway Buick GMC LLC*,
Civil Action No. 3:20-CV-2439-B, 2021 WL 2376721 (N.D. Tex.
June 10, 2021) .................................................................... 23, 31

*Pratt v. Harris County, Tex.*,
822 F.3d 174 (5th Cir. 2016) ........................................ 39, 44, 48

*Price v. City of Bossier*,
841 F. App'x 650 (5th Cir. 2021) .......................................... 26

*Ramirez v. Martinez*,
716 F.3d 369 (5th Cir. 2013) .................................................. 20

*Roebuck v. Dothan Sec., Inc.*,
515 F. App'x 275 (5th Cir. 2013) .......................................... 33

*Russell v. Altom*,
546 F. App'x 432 (5th Cir. 2013) ............................. 22, 23, 30, 31

*Salazar v. Molina*,
37 F.4th 278 (5th Cir. 2022) ............................................. 40, 44

*Saucier v. Katz*,
533 U.S. 194 (2001) .............................................................. 14

*Scott v. Harris*,
550 U.S. 372 (2007) .............................................................. 14

*Shaw v. Villanueva*,
918 F.3d 414 (5th Cir. 2019) .................................... 23, 24, 29

*Smith v. Gonzales*,
670 F.2d 522 (5th Cir. 1982) ................................. 22, 23, 30, 31

*Smith v. Heap*,
31 F.4th 905 (5th Cir. 2022) ................................................. 27

*Sullivan v. Garza Cnty. Sheriff's Office*,
  No. 5:23-CV-049-H-BQ, 2023 WL 9219306 (N.D. Tex. Nov. 3,
  2023), report and recommendation adopted as modified, No. 5:23-
  CV-049-H-BQ, 2024 WL 133425 (N.D. Tex. Jan. 11, 2024).................... 34

*Tarver v. City of Edna*,
  410 F.3d 745 (5th Cir. 2005) ....................................................27, 37, 41, 42

*Taylor v. Books A Million, Inc.*,
  296 F.3d 376 (5th Cir. 2002) ............................................................10, 12

*Taylor v. Gregg*,
  36 F.3d 453 (5th Cir. 1994) ........................................................ 22, 23, 30

*Taylor v. LeBlanc*,
  60 F.4th 246 (5th Cir. 2023) ................................................................. 14

*Terry v. Ohio*,
  392 U.S. 1 (1968) ..................................................................................... 33

*Thomas v. City of Galveston, Tex.*,
  800 F. Supp. 2d 826 (S.D. Tex. 2011)..................................................... 33

*Trammell v. Fruge*,
  868 F.3d 332 (5th Cir. 2017) ................................................................. 27

*Tucker v City of Shreveport*,
  998 F3d 165 (5th Cir 2021) ............................................................13, 37

*U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*,
  336 F.3d 375 (5th Cir. 2003) ................................................................. 10

*United States v. Alvarez*,
  40 F.4th 339 (5th Cir. 2022) ................................................................. 35

*United States v. Jordan*,
  232 F.3d 447 (5th Cir. 2000) ................................................................. 36

*United States v. Pack*,
  612 F.3d 341 (5th Cir. 2010) ................................................................. 35

*United States v. Sanders*,
  994 F.2d 200 (5th Cir. 1993) ................................................................. 32

*Walker v. Munsell*,
  281 F. App'x 388 (5th Cir. 2008) (per curiam) ........................................ 26

*Wells v. Bonner*,
  45 F.3d 90 (5th Cir. 1995) ...................................................................... 19

*White v. Pauly*,
  137 S. Ct. 548 (2017) ............................................................................. 44

*Wicks v. Miss. State Emp't Servs.*,
  41 F.3d 991 (5th Cir. 1995) .................................................................... 16

*Wyatt v. Fletcher*,
  718 F.3d 496 (5th Cir. 2013) .................................................................. 15

*Zavala v. Harris County, Tex.*,
  No. 22-20611, 2023 WL 8058711 (5th Cir. Nov. 21, 2023) (per
  curiam) (unpublished) ........................................................................ 42, 43

## Statutes

28 U.S.C. § 1291 ....................................................................................... 1

## Other Authorities

Fed. R. Civ. P. 12(b)(6) ............................................................................. 9

Fed. R. Civ. P. 8(a)(2) ........................................................................... 9, 12

## Jurisdictional Statement

The Court's order denying dismissal on the issue of qualified immunity is an immediately appealable final decision under 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 427 U.S. 511, 527-30 (1985). Similarly, a district court's decision not to apply the *Heck* bar is reviewable by interlocutory appeal. *Poole v. City of Shreveport*, 13 F.4th 420, 426 (5th Cir. 2021).

# Statement of the Issues

## Issue One

Are Ramos's false arrest claims *Heck*-barred?

## Issue Two

Are Ramos's false arrest claims barred by the independent intermediary doctrine?

## Issue Three

Since Ramos was indicted and later convicted for his conduct, did he fail to allege facts to overcome Irwin's and Gilbreath's qualified immunity as to the false arrest claim?

## Issue Four

Did Ramos fail to allege facts to overcome Irwin's and Gilbreath's qualified immunity as to Ramos's claim of excessive force in "tackling" him?

## Issue Five

Did Ramos fail to allege facts to overcome Dago's, Smith's, and Morrison's qualified immunity as to Ramos's claim of excessive force in "hogtying" him?

To the Honorable Fifth Circuit Court of Appeals:

## Statement of the Case

### I.     Facts relevant to the issues submitted for review

Ramos alleges[1] that early in the morning on July 11, 2021, Officer Irwin was notified of a 9-1-1 call that a Hispanic male had committed an assault against a Hispanic female. ROA.10. The 9-1-1 caller also described both as drunk. ROA.10.

Irwin made his way to the location. ROA.11. People on the street flagged him down to relay that the suspect was only verbally arguing and not physically fighting. ROA.11. Irwin drove a bit further and observed shirtless Ramos. ROA.11. Irwin pulled alongside Ramos and asked Ramos to "tell his side of the story". ROA.12. Ramos did not comply, because "he did not understand what story Irwin was talking about." ROA.12. Irwin then exited his vehicle and walked toward Ramos. ROA.12. Irwin commanded Ramos "to stop moving away from him." ROA.12. Ramos stopped, which Irwin relayed over dispatch. ROA.12.

---

[1] Because this case comes to the Court at the 12(b)(6) stage, the facts are derived solely from Ramos's complaint and facts that can be judicially noticed. Officers do not concede the truth of these allegations but assume the truth of the well-pleaded allegations for purposes of this appeal.

Within seconds Irwin grabbed Ramos's arm and tackled him to the ground. ROA.12. Shortly afterwards, Gilbreath arrived on scene and assisted Irwin get Ramos to the ground. ROA.13. Gilbreath sat on top of Ramos. ROA.13. Irwin and Gilbreath handcuffed Ramos. ROA.13.

Then Irwin asked Ramos, "Where's that girl you were talking with?" ROA.14. Ramos replied "she's my sister." ROA.14.

Ramos was then placed in an HPD patrol vehicle. Roa.14. Ramos' condition began to deteriorate to the point that Irwin suspected Ramos of an overdose from some unknown drug. ROA.15. He began to act erratically while handcuffed in the back of the cruiser. ROA.16. An officer placed a spit mask on him. ROA.16.

Officers Smith, Dago, and Morrison then removed Ramos from the cruiser so that Ramos could be "interlocked" or "hogtied". ROA.16-17.

Ramos had trouble breathing while hogtied. ROA.17. His arm and ribcage were bruised as a result of being "hogtied". ROA.17.

## II.    Procedural history

On July 11, 2021 at 4:17 a.m., Ramos was arrested. ROA.78. He was charged with two counts of assaulting a peace officer, and one count of harassing a public servant. ROA.78-89. On July 12, 2021, Magistrate Jim Callan

determined that probable cause existed for all three counts. ROA.78-89. Release

on a personal bond was not recommended noting:

> Ofcs dispatched to assist an officer. Assault in progress. Male
> assaulting female. Def was hiding near a residence. Def [sweating]
> profusely. Initially welfare ck. Def sees marked unit. Def takes off.
> Ofcs chase. Ofc apprehend. Df resists. Def. spits on female officer.
> Def kicks an officer as he is placed at officer. Def starts kicking
> officer. They try to further restrain him by putting leg irons on. Def
> kicks another female officer. Def appeared to be under the influence
> of some unknown drug.

ROA.79, 83, 87.

On November 19, 2021, a grand jury returned indictments of two counts

of assaulting a peace officer and one count of harassment of public servant.

R0A.91-96. The harassment indictment stated:

> Alberto Nicolas Ramos, hereafter styled the Defendant, heretofore
> on or about July 11, 2021, did then and there unlawfully with the
> intent to harass, cause J. Gilbreath, hereafter styled the
> Complainant, whom the Defendant knew to be a public servant, to
> contact the saliva of the Defendant, while the Complainant was
> lawfully discharging an official duty.

ROA.91. The assault indictments stated:

> Alberto Nicolas Ramos, hereafter styled the Defendant, heretofore
> on or about July 11, 2021, did then and there unlawfully,
> intentionally and knowingly cause bodily injury to F. Morrison,
> hereinafter called the Complainant, a peace officer, by kicking the
> Complainant with defendant's foot, and at the time of the assault
> the defendant knew the complainant was a peace officer lawfully
> discharging an official duty.

ROA.93.

Alberto Nicolas Ramos, hereafter styled the Defendant, heretofore on or about July 11, 2021, did then and there unlawfully, intentionally and knowingly cause bodily injury to H. Smith, hereinafter called the Complainant, a peace officer, by kicking the Complainant with defendant's foot, and at the time of the assault the defendant knew the complainant was a peace officer lawfully discharging an official duty.

ROA.95.

With these charges pending, on July 10, 2023, Ramos filed suit. ROA.7.

Ramos' complaint asserted three claims under 42. U.S.C. § 1983:

- arrest without probable cause in violation of the Fourth Amendment; ROA.18;

- using excessive force by hogtying him in violation of the Fourth amendment; ROA.19; and

- using excessive force by tackling him in violation of the Fourth Amendment. Roa.20.

Ramos' complaint expressly referenced the criminal charges and the probable cause determinations. ROA.15-16.

On September 27, 2023, Officers Irwin and Dago filed their Rule 12(b)(6) motion to dismiss asserting qualified immunity and the *Heck* doctrine. ROA.63.

On October 16, 2023, Officers Smith and Morrison moved to dismiss asserting qualified immunity and the *Heck* doctrine. ROA.112.

On November 2, 2023, Ramos filed a consolidated response to both motions. ROA.177.

On January 8-9, 2024, Ramos was tried on all three counts in a consolidated jury trial. ROA.234. The jury found Ramos guilty of harassing a public servant. ROA.241. The jury found Ramos not guilty of both counts of assaulting a peace officer. ROA.237, ROA.239.

On January 25, 2024, Ramos served Gilbreath. ROA.249. Gilbreath moved to dismiss Ramos claims against her, asserting qualified immunity and the *Heck* doctrine based upon his criminal conviction for harassing a public servant. ROA.254.

## III.    Rulings presented for review

On March 18, 2024 the trial court granted the motions in part on qualified immunity due to lack of personal involvement. The court granted in part Dago, Smith, and Morrison's motions based on qualified immunity because Ramos alleged that only Gilbreath and Irwin tackled and arrested Ramos. ROA.360. The only claim left against Dago, Smith, and Morrison is excessive force stemming from the hog-tying. ROA.360.

The court granted in part Gilbreath and Irwin's motions based on qualified immunity because Ramos alleged that only Dago, Smith, and Morrison were involved in the hog-tying. ROA.360. The only claims left against

Gilbreath and Irwin are false arrest and excessive force based on the initial take-down. ROA.360.

## Summary of the Argument

Ramos's false arrest claim is barred both by the *Heck* doctrine and by the independent intermediary doctrine. Ramos complains of a Terry stop, which he resisted. Once arrested, he continued to resist, including spitting on Officers. He claims that the Officers' conduct in the arrest resulted in injuries that were more than de minimis, but he did not allege facts stating what such injuries were.

The arrest was not objectively unreasonable, and Ramos cited no clearly established law that would have prohibited the Officers' conduct. This applies to both the "tackling" allegation and the "hogtying" allegation.

Ramos did not meet his burden to overcome the Officers' entitlement to qualified immunity for their conduct in arresting him or in physically subduing him. Officers used measured and ascending force to constrain Ramos as he resisted.

Ramos was indicted by a grand jury on three counts, and he was convicted of one and acquitted of two.

## Argument

### I.    Seminal Authority

This appeal presents issues of qualified immunity at the pleadings stage. Accordingly, Officers present this discussion of seminal authority to hopefully aid the Court's resolution.

### A.    12(b)(6) standard of review

This Court reviews *de novo* a grant or denial of a Rule 12(b)(6) motion to dismiss. *Bradford v. Law Firm of Gauthier, Houghtaling & Williams, L.L.P.*, 696 F. App'x 691, 693 (5th Cir. 2017) (per curiam); *Cousin v. Small*, 325 F.3d 627, 631 (5th Cir. 2003).

A complaint may be dismissed as a matter of law if it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the complaint. *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "An unadorned, the defendant-unlawfully-harmed-me accusation" will not suffice.

*Iqbal*, 556 U.S. at 678-79. Thus, "dismissal is appropriate only if the complaint fails to plead 'enough facts to state a claim of relief that is plausible on its face.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

"When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint and construes them in light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003). However, courts are not bound to accept as true "threadbare recitals of the elements of a cause of action, supported by mere

conclusory statement," or legal conclusions couched as factual assertions. *Iqbal*, 556 US at 678; *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) ("Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim"). Courts need not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (citing *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)).

Furthermore, a court may consider public records attached to the rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. *See, e.g.*, *Md. Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 404 n.5 (S.D. Tex. 2011) ("Because the documents the City attached to its amended motion to dismiss are public records, this court may consider them without converting the motion to dismiss into a motion for summary judgment.") (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 544. Dismissal is therefore appropriate if the complaint lacks an allegation regarding a required element

necessary to obtain relief. *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 624 (5th Cir. 2001) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)); *see also Hale*, 642 F.3d at 499. Conclusory allegations or legal conclusions masquerading as factual conclusions cannot prevent dismissal. *Taylor*, 296 F.3d at 378 (quoting *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993)).

If a complaint fails to state a claim upon which relief can be granted, a trial court may dismiss the complaint as a matter of law. *See* Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *and see Iqbal*, 556 U.S. at 677; *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya*, 614 F.3d at 148 (quoting *Iqbal*, 556 U.S. at 678).

## B.     Qualified immunity

Governmental officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability. *Harlow*, 457 U.S. at 806.

Qualified immunity is justified unless no reasonable officer could have acted as the defendant officer did, or every reasonable officer faced with the same facts would not have acted as the defendant officer did. *Kokesh v. Curlee*, 14 F.4th 382 (5th Cir. 2021). In other words, if officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *Tucker v City of Shreveport*, 998 F3d 165, 172 (5th Cir 2021).

*Harlow* adopted this criterion of "objective legal reasonableness," rather than good faith, precisely in order to "permit the defeat of insubstantial claims without resort to trial." *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996). Qualified immunity is therefore, best described as an "immunity from suit rather than a

mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). As such, one of the most important benefits of the qualified immunity defense is protection from pretrial discovery, which is costly, time-consuming, and intrusive. *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022) (citing *Backe v. LeBlanc*, 691 F.3d 645, 647–49 (5th Cir. 2012)).

Once a defendant has invoked the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). The threshold inquiry in resolving an issue of qualified immunity is whether, taking the facts in the light most favorable to the plaintiff, the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Scott v. Harris*, 550 U.S. 372, 377-78 (2007). Next, the Court considers whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201.

The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law. *Taylor v. LeBlanc*, 60 F.4th 246 (5th Cir. 2023).

"Answering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). "This requirement establishes a high bar." *Id.* When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity. *Id.* Officials "who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)).

Courts have discretion to decide which prong of the qualified-immunity analysis to address first. *Morgan*, 659 F.3d at 371.

Where public officials assert qualified immunity in a motion to dismiss, a district court must rule on the immunity question at that stage. *Carswell*, 54 F.4th at 311-12. It cannot defer that question until summary judgment. *Id.* Nor can it permit discovery against the immunity-asserting defendants before it rules on their defense. *Id.*

On a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41

F.3d 991, 994 (5th Cir. 1995)). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* at 648. *See also Cole v. Carson*, 935 F.3d 444, 474 (5th Cir. 2019) (Ho & Oldham, JJ., dissenting) (noting thirteen cases in the last sixteen years in which the Supreme Court applied the "extraordinary remedy of a summary reversal" to correct failures "not only to identify a clearly established rule of law, but to do so with *great specificity*").

When analyzing claims of qualified immunity, the court must assess each defendant individually. *See Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) ("In cases where the defendants have not acted in unison, qualified immunity claims should be addressed separately for each individual defendant." (quotation omitted)); *Joseph v. Bartlett*, 981 F.3d 319, 325 & n.7 (5th Cir. 2020) (clarifying that "[t]o the extent [*Darden*] could be read as suggesting that collective analysis is appropriate for defendants acting in unison, we don't read it that way").

**C.    The probable cause standard for arrest and the reasonable suspicion standard for an investigatory stop**

The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted— indeed for every suspect released. *Hall v. Trochessett*, ___ F4th ___, 2024 WL 3063109, at *2 (5th Cir. June 20, 2024). To state a claim for an alleged false arrest without a warrant, a plaintiff must, at minimum, allege plausible facts that establish the lack of probable cause for his arrest. *Iqbal*, 556 U.S. at 678. *See also Hale*, 642 F.3d at 499; *C.H. v. Rankin Cnty. Sch. Dist.*, 415 F. App'x 541, 543 (5th Cir. 2011).

It is well-settled that the lack of probable cause is "a necessary component" of a false arrest claim. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("If there was probable cause for any of the charges made … then the arrest was supported by probable cause, and the claim for false arrest fails.") (emphasis omitted) (additional citations omitted); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment … require a showing of no probable cause."). Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest [even if] the innocence of the suspect

is later proved." *Hall*, 2024 WL 3063109, at *2 (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)).

Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge, at the moment of arrest, are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. *C.H.*, 415 F. App'x at 543. "For warrantless arrests, the test for whether the police officer had probable cause to arrest is if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)). "An officer may conduct a warrantless arrest based on probable cause that an individual has committed even a minor offense, including misdemeanors." *Deville*, 567 F.3d at 164, 165 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994)).

The officer's subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. *Hall*, 2024 WL 3063109, at *3. Rather, if there was probable cause for any of the charges made then the arrest was supported by probable cause, and the claim for false arrest fails." *Deville*, 567 F.3d at 164 (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th

Cir. 1995)); *Hunter v. City of Houston*, 564 F. Supp. 3d 517, 527 (S.D. Tex. 2021) ("Whether there was probable cause requires identification and analysis of a particular crime. Singer arrested Hunter on allegation of both criminal trespass and resisting arrest. Dkt 57-1 at 7. A sufficient showing of probable cause as to either one necessarily undermines any assertion of unlawful arrest.").

The Fourth Amendment requires a judicial determination of probable cause "as a prerequisite to any extended restraint on liberty following an arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). "[T]he accused is not 'entitled to judicial oversight or review of the decision to prosecute.'" *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (multiple quotations omitted). Therefore, charges or prosecutions are only actionable if accompanied by a separate arrest or incarceration. *Id.* at 269.

In the false arrest context, qualified immunity will apply "if a reasonable officer could have concluded that there was probable cause upon the facts then available to him." *Petersen v. Johnson*, 57 F.4th 225, 232 (5th Cir. 2023) (quoting *Lyford*, 243 F.3d at 190); *see Club Retro*, 568 F.3d at 204. "Probable cause justifying an arrest 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Hogan v.*

*Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) (quoting *Michigan v. DeFillippo*,

443 U.S. 31, 37 (1979)).

> Probable cause to arrest "is not a high bar." Kaley v. United States,
> 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014). It
> "requires only a probability or substantial chance of criminal
> activity, not an actual showing of such activity." Illinois v. Gates,
> 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). And
> in the qualified immunity context, "[e]ven law enforcement officials
> who 'reasonably but mistakenly conclude that probable cause is
> present' are entitled to immunity." Mendenhall v. Riser, 213 F.3d
> 226, 230 (5th Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224,
> 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

*Hall*, 2024 WL 3063109, at *3.

In Texas, the act of resisting can supply probable cause for the arrest itself.

*Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (holding that probable

cause existed for arrest where plaintiff did not comply with officer instructions

to "turn around and put your hands behind your back" and then plaintiff pulled

his arm away after the officer attempted to apply handcuffs); *Buehler*, 27 F.4th at

983–84 ("According to Garibay's affidavit, when Dear told Buehler to turn

around and that he was under arrest, Buehler "turned around" and began

"walking away." Buehler, on the other hand, asserts that he was merely turning

around in preparation for his arrest, in accordance with Dear's orders. …Based

on the video evidence, we conclude that, at the very least, the Officers could

reasonably have believed that Buehler was turning to walk away rather than

complying with their orders. … And we have acknowledged that, as the Officers

in this case duly point out, a "suspect [who] ... back[s] away from the arresting

officers" is "actively resist[ing] arrest"—albeit mildly.").

Actual probable cause is not necessary; merely *arguable* probable cause is

sufficient to trigger qualified immunity. *Petersen*, 57 F.4th at 232. *See also Club

Retro*, 568 F.3d at 207 ("[P]laintiffs must allege facts permitting an inference that

defendants lacked arguable (that is, reasonable but mistaken) probable cause for

the arrests."); *see also D.C. v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 591 (2018).

Defeating qualified immunity is thus "a significant hurdle." *Lyford*, 243 F.3d at

190; *Petersen*, 57 F.4th at 232. *See also Gliatta v. Jones*, 96 F. App'x 249, 254 (5th

Cir. 2004) ("Gliatta's contentions that there are innocent explanations for the

suspicious circumstances of Reed's and Brandon's disappearance do not negate

*arguable* probable cause.); *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000)

("However, regardless of logic, and even assuming the worst—i.e., the

appellant-deputies seized upon a mystical confluence of events to accomplish

their nefarious goal of defeating Mendenhall in the upcoming election—we are

compelled by our case law that clearly dictates subjective intent, motive, or even

outright animus are irrelevant in a determination of qualified immunity based

on arguable probable cause to arrest, just as an officer's good intent is irrelevant

when he contravenes settled law." *Anderson v. Creighton*, 483 U.S. 635, 641

(1987) (citing *Harlow*, 457 U.S. at 815-20).

### D.     Independent intermediary doctrine

Once "facts supporting an arrest are placed before an independent intermediary, such as a magistrate or a grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Cuadra*, 626 F.3d at 813 (quoting *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994)). The independent intermediary doctrine becomes relevant when a plaintiff's claims depend on a lack of probable cause to arrest him. *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553-54 (5th Cir. 2016) (citing *Cuadra*, 626 F.3d at 813 (applying the independent intermediary doctrine to Fourth Amendment claims); *Russell v. Altom*, 546 F. App'x 432, 436-37 (5th Cir. 2013) (applying the doctrine to First Amendment claims)).

Under this doctrine, "even an officer who acted with malice . . . will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party." *Buehler*, 824 F.3d 548, 553-54 (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)); *see also Hall*, 2024 WL 3063109 at *3. This Court's "precedents have applied this rule even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime." *Buehler*, 824

F.3d at 553-54 (citing *Gregg*, 36 F.3d at 455, 456-57 (applying doctrine where presentment to magistrate and grand jury occurred after arrest), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc); *Russell*, 546 F. App'x at 436-37; *Smith*, 670 F.2d at 526 ("The constitution does not guarantee that only the guilty will be arrested.")).

A plaintiff may avoid the independent-intermediary doctrine only by plausibly alleging facts supporting the inference that the defendant materially tainted the independent intermediary. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (emphasis added) (citing *Buehler*, 824 F.3d at 555). "[T]o overcome the independent intermediary doctrine at the Rule 12(b)(6) stage, the plaintiff must bring specific, nonspeculative allegations that the officer deliberately or recklessly provided false information to the independent intermediary." *Poullard v. Gateway Buick GMC LLC*, Civil Action No. 3:20-CV-2439-B, 2021 WL 2376721, at *14 (N.D. Tex. June 10, 2021) (citing *Anokwuru v. City of Houston*, 990 F.3d 956, 962 (5th Cir. 2021)).

In *Shaw*, this Court considered whether the district court erred in denying qualified immunity at the motion to dismiss stage. *Shaw v. Villanueva*, 918 F.3d 414 (5th Cir. 2019). In that case, a former sheriff, Bobby Mutz, accused Kyle Shaw of harassment in a voluntary statement. *Id.* at 416. Based on the statement, a deputy sheriff prepared a probable-cause affidavit, and submitted it to Justice

of the Peace David Sotelo. *Id.* Sotelo signed the arrest warrant. *Id.* Shaw was arrested, but a grand jury no-billed Shaw. *Id.* Shaw then filed suit, which including civil rights claims against five individual defendants. *Id.*

The Court recognized that the independent intermediary doctrine is very broad, shielding even parties who maliciously procure a warrant. *Id.* at 417. And the *Shaw* Court rejected the application of the taint exception:

> Yes, Mutz's statement was false. Contrary to the statement, Shaw was not even at Falls City Elementary School on the date alleged. Still, that doesn't establish that Villanueva or Ebrom knew Mutz was lying. Nor does it show that their subordinates knew Mutz was lying when they prepared the affidavit. And Shaw fails to allege any other facts that show Villanueva or Ebrom misdirected Justice of the Peace Sotelo. Unlike in *McLin*, Shaw's allegations come up short.

*Shaw*, 918 F.3d at 418. The Court ultimately held that the plaintiff's unadorned and conclusory allegations were "all broth and no beans." *Id.*

## E.     *Heck* Doctrine

Under the *Heck* doctrine, a civil tort action, including an action under § 1983 is not an appropriate vehicle to challenge the validity of outstanding criminal judgments. *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 (5th Cir. 2007) (citing *Heck v. Humphrey*, 512 U.S. 477, 486 (1994)). *Heck* does not allow a civil rights lawsuit to be an alternative vehicle to a criminal case for challenging law enforcement decisions that resulted in arrest or prosecution unless the

criminal case was resolved in favor of the accused. *Morris v. Mekdessie*, 768 F. App'x 299, 301 (5th Cir. 2019) (unpublished). *Heck* prohibits suit under § 1983 if success on the claim would necessarily imply that a prior conviction or sentence is invalid. *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020). That is because courts are wary of duplicative litigation and the potential for conflicting judgments. *Id.*

Hence, when a plaintiff alleges tort claims against his arresting officers, the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. *DeLeon*, 488 F.3d 649, 652 (5th Cir. 2007). If so, the claim is barred unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* It is the plaintiff's burden to establish that the proceeding terminated in his favor. *Hoog-Watson v. Guadalupe County, Tex.*, 591 F.3d 431, 435 (5th Cir. 2009).

The determination of whether an individual claim is barred by *Heck* is analytical and fact-intensive; a court may bar only those claims whose success require negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction. *Gray v.*

*White*, 18 F.4th 463, 468 (5th Cir. 2021) (citing *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008)). So when a plaintiff brings multiple § 1983 claims, *Heck* may bar those claims that potentially conflict with the factual underpinnings of a prior conviction, while posing no bar to other claims. *Aucoin*, 958 F.3d at 382. Thus, a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance. *Price v. City of Bossier*, 841 F. App'x 650, 654 (5th Cir. 2021). But if the excessive force claim stems from "a single violent encounter," then the conviction bars recovery. *DeLeon*, 488 F.3d at 656–57. And when a plaintiff's claim is based solely on his assertions that he did nothing wrong, and was attacked by the officers for no reason, that suit squarely challenges the factual determination that underlies his conviction and is necessarily at odds with the conviction. *Aucoin*, 958 F.3d at 383 (citing *Walker v. Munsell*, 281 F. App'x 388, 390 (5th Cir. 2008) (per curiam)).

### F.    Use of force

To state a claim for the use of excessive force under the Fourth Amendment, Plaintiffs must allege an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir.

2017). The test used to determine whether a use of force was reasonable under the Fourth Amendment "is not capable of precise definition or mechanical application." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Rather, "its proper application requires careful attention to the facts and circumstances of each particular case." *Id.* at 396.

In cases claiming excessive force where the encounter required split-second judgments, it is "especially difficult" to overcome qualified immunity. *Henderson v. Harris County, Tex.*, 51 F.4th 125, 132–33 (5th Cir. 2022) (per curiam). That is because in the Fourth Amendment use of force context, it is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts. *Id.* Thus, the plaintiff must demonstrate that the law is *so* clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately. *Id.*

A significant injury is not required to support an excessive force claim, but the injury must be more than de minimis. *Arthur v. Officer Mohammed Bellahna*, CV H-18-2777, 2020 WL 6292453, at *3 (S.D. Tex. Oct. 27, 2020) (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005)). Objectively reasonable force will result in de minimis injuries only, and de minimis injuries cannot sustain an excessive-force claim. *Smith v. Heap*, 31 F.4th 905, 912 (5th Cir. 2022) (citing

*Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quotation omitted). A plaintiff's self-reported mental suffering is entitled to relatively little weight in the Fifth Circuit's Fourth Amendment reasonableness analysis; indeed, the Fifth Circuit has rejected attempts by excessive-force plaintiffs to parlay their minimal injuries into more serious ones by tacking on allegations of psychological suffering. *Buehler v. Dear*, 27 F.4th 969, 983 (5th Cir. 2022).

The U.S. Supreme Court has already rejected the provocation doctrine. *County of Los Angeles, Cal. v. Mendez*, 137 S. Ct. 1539, 1546 (2017) ("The provocation rule, which has been 'sharply questioned' outside the Ninth Circuit, is incompatible with our excessive force jurisprudence. The rule's fundamental flaw is that it uses another constitutional violation to manufacture an excessive force claim where one would not otherwise exist.") (citation omitted).

## II.    Ramos's false arrest claims are barred both by *Heck* and by the independent intermediary doctrine.

### A.    Ramos's false arrest claims against Officers Irwin and Gilbreath are barred by *Heck*.

Ramos was indicted and tried on three counts. He was acquitted of two of them, and convicted of one.

Aa noted above, when a plaintiff alleges tort claims against his arresting officers, the court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. *DeLeon*, 488

F.3d at 652. If so, the claim is barred unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* It is the plaintiff's burden to establish that the proceeding terminated in his favor. *Hoog-Watson*, 591 F.3d at 435. Ramos has not met that burden. His unadorned and conclusory allegations are "all broth and no beans." *Shaw*, 918 F.3d at 418.

Moreover, the two aquittals do not negate that probable cause existed at the time of Ramos' arrest. *Jordan v. Brumfield*, 687 F. App'x 408, 415 (5th Cir. 2017) (quoting *Deville*, 567 F.3d at 165 ("Evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest")). Because Ramos has not shown a lack of probable cause, his argument fails.

### B.     Ramos's false arrest claims against Officers Irwin and Gilbreath are barred by the independent intermediary doctrine.

As set out above, the independent intermediary doctrine breaks the chain of causation and protects the officers from a false arrest claim. The controlling authorities are again cited here. Once "facts supporting an arrest are placed before an independent intermediary, such as a magistrate or a grand jury, the

intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Cuadra*, 626 F.3d at 813 (quoting *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994)). The independent intermediary doctrine becomes relevant when a plaintiff's claims depend on a lack of probable cause to arrest him. *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553-54 (5th Cir. 2016) (citing *Cuadra*, 626 F.3d at 813 (applying the independent intermediary doctrine to Fourth Amendment claims); *Russell v. Altom*, 546 F. App'x 432, 436-37 (5th Cir. 2013) (applying the doctrine to First Amendment claims)).

Under this doctrine, "even an officer who acted with malice . . . will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party." *Buehler*, 824 F.3d 548, 553-54 (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)); *see also Hall*, 2024 WL 3063109 at *3.

This Court's "precedents have applied this rule even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime." *Buehler*, 824 F.3d at 553-54 (citing *Gregg*, 36 F.3d at 455, 456-57 (applying doctrine where presentment to magistrate and grand jury occurred after arrest), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d

939, 949 (5th Cir. 2003) (en banc); *Russell*, 546 F. App'x at 436-37; *Smith*, 670 F.2d at 526 ("The constitution does not guarantee that only the guilty will be arrested.")).

In *Espinal v. City of Houston*, this Court affirmed the dismissal of the plaintiff's false arrest claim based the independent intermediary doctrine: "Because a grand jury indicted Espinal, we can start (and end) our analysis with the independent intermediary doctrine." 96 F.4th 741, 745 (5th Cir. 2024). A plaintiff may avoid the independent-intermediary doctrine only by plausibly alleging facts supporting the inference that the defendant materially tainted the independent intermediary. *McLin*, 866 F.3d at 689 (emphasis added) (citing *Buehler*, 824 F.3d at 555). "[T]o overcome the independent intermediary doctrine at the Rule 12(b)(6) stage, the plaintiff must bring specific, nonspeculative allegations that the officer deliberately or recklessly provided false information to the independent intermediary." *Poullard*, 2021 WL 2376721, at *14 (citing *Anokwuru*, 990 F.3d at 962).

Ramos has not alleged facts that would avoid the doctrine, and the doctrine bars his claim.

**C.    Ramos's arrest was not objectively unreasonable.**

Ramos attempts to avoid these probable cause findings and operation of the independent intermediary doctrine by arguing there was no probable cause finding to support officers initially tackling, sitting on, and handcuffing him. Implicit in Ramos's argument is the concept that he was "under arrest" the moment he was tackled and/or placed in handcuffs. ROA.307. But his argument muddles an arrest with an investigatory stop or detention. "Clearly, using some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect—whether singly or in combination—do not automatically convert an investigatory detention into an arrest requiring probable cause." *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993).

Ramos's allegations merely suggest the initial stop was an investigatory stop because Officer Irwin was asking Ramose to tell his side of the story. ROA.12. Ramos's allegations also suggest that he did not stop and did not share his side of the story because Officer Irwin then had to get out of his vehicle and command Ramos "to stop moving away from him." ROA.12. Yet Ramos's complaint did not assert a claim predicated on an unconstitutional "stop" lacking reasonable suspicion; His Count I is based on "arresting Mr. Ramos Without Probable Cause." ROA.18. Ramos cannot attempt to assert a new

cause of action in response to Officer Gilbreath's motion to dismiss. *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984) for the proposition that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 838 (S.D. Tex. 2011) ("Nowhere in his Amended Complaint does Plaintiff mention false police reports or false affidavits, or make any other reference to Officers Atchley and Allred taking improper actions so that Plaintiff would be charged with a crime. The closest thing to such an allegation is a passing mention that the charges were 'brought falsely against him.' Instead, Plaintiff makes these claims only in his response to the Motion to Dismiss. The Court may not consider these statements as allegations."); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) ("[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.").

Even if Ramos had alleged a claim for an unreasonable *Terry* stop, such a claim is still untenable for three reasons. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

First, the standard for reasonable suspicion is even lower than for probable cause. *Alabama v. White*, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause."). As such, the ***six*** probable cause

findings by the independent intermediaries would similarly break the chain of causation for any Fourth Amendment violation arising from that stop. *Sullivan v. Garza Cnty. Sheriff's Office*, No. 5:23-CV-049-H-BQ, 2023 WL 9219306, at *16 (N.D. Tex. Nov. 3, 2023), report and recommendation adopted as modified, No. 5:23-CV-049-H-BQ, 2024 WL 133425 (N.D. Tex. Jan. 11, 2024) (recognizing that where probable cause exists for an arrest, a court need not resolve nuanced questions as to when or if a detention amounted to arrest because a de facto arrest is justified).

Second, although Ramos argued that "Defendants Irwin and Gilbreath stopped and arrested him solely based on his race and sex… ," ROA.309, his own complaint describes how the probable cause determinations stated that Ramos met this description in that he "appeared to be under the influence of some unknown drug." ROA.15-16. In that same vein, Ramos ignores the temporal and geographic nexus between himself and the alleged assailant in the 9-1-1 call; his complaint describes how Officer Irwin responded to the scene of the 9-1-1 call and "people on the street flagged him down" to tell him "the alleged perpetrator was only verbally arguing and not physically fighting." ROA.11. In other words, Officer Irwin and then Officer Gilbreath arrived shortly after the initial altercation occurred, to the scene where the incident actually occurred, that witnesses were still in the area, and that the suspect was

reported to still be in the area and described as a Hispanic male in an intoxicated state. Ramos met that description, not just because he was a Hispanic male, but because he was a Hispanic male *in that area* who appeared to be very intoxicated indeed. Taken together, these facts and rational inferences taken from them meet the minimum level of objective justification required for the low threshold needed for reasonable suspicion. *See United States v. Pack*, 612 F.3d 341, 352 (5th Cir. 2010) ("Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the ... seizure."). This close temporal and geographic proximity is what distinguishes the stop of Ramos from that of the Hispanic male suspect in *United States v. Alvarez*, 40 F.4th 339 (5th Cir. 2022), who had been in a specified area of Corpus Christi, Texas "at some unspecified time in the past." *Id.* at 343.

Third, Ramos expressly pled that Gilbreath did not arrive on the scene until after a struggle had already ensued between himself and Officer Irwin. ROA.13. Seeing an obviously intoxicated suspect who met the description of the suspect who had allegedly assaulted the complainant struggling with an officer who was trying to get the suspect into handcuffs would provide an officer with reasonable suspicion to justify aiding her colleague to get the resisting suspect into handcuffs, even through use of some de minimis force. *See e.g.*, *United States*

*v. Jordan*, 232 F.3d 447, 449–50 (5th Cir. 2000) (holding that police did not act

unreasonably when handcuffing suspect who acted suspiciously).

### D.     No clearly established law prohibited the Officers' conduct.

Ramos has the burden of citing clearly established law that would inform

all officers that the conduct in question is a constitutional violation. Ramos has

not cited any such law.

### III.     Ramos did not allege facts that would overcome Irwin's and Gilbreath's qualified immunity for Ramos's claim of excessive force in "tackling" him or in sitting on him.

### A.     Not objectively unreasonable

#### 1.     Injuries were de minimis

Ramos complained that after Irwin got out of his police vehicle, he

grabbed Ramos's arm and tackled him to the ground. ROA.12. As Officer Irwin

argued in his motion, Ramos alleged no significant injuries—i.e., more than de

minimis—that resulted from the initial take-down (the alleged "tackling").

ROA.71.

As Officer Gilbreath argued in her motion, Ramos alleges no injuries that

resulted from Officer Gilbreath sitting on top of him. ROA.262, 13. While

Ramos insists that he "pleads injuries that are more than de minimis[,]"

ROA310, he does not actually say what they are. Nor does he causally connect

them to the "tackling" as opposed to, for example, road rash he could have inflicted upon himself from writhing on a gravel road during a bad drug-induced trip. This Court on at least two occasions held that bruising on an arrestee's wrists from handcuffing were de minimis injuries that could not support an excessive force claim. *See Tarver*, 410 F.3d at 751-52; *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007)

Instead, Ramos suggests he can recover nominal damages for a constitutional deprivation without proof of actual injury. ROA.310. But Ramos misses the point entirely: in the use of force context, there is no constitutional deprivation without actual injury. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) ("Although a showing of 'significant injury' is no longer required in the context of an excessive force claim, 'we do require a plaintiff asserting an excessive force claim to have 'suffered at least some form of injury'".)

## B.    No clearly established law

Ramos can reference no authority as of July 11, 2021, that officers were prohibited from taking down a suspect mere seconds after exiting their police vehicle or "before asking investigatory questions....such as asking for identification." ROA.12. To the contrary, that same year in *Tucker*, 998 F.3d at 175–78 this Court held that the district court erred in concluding that the conduct

of the officers in taking the plaintiff to the ground was objectively unreasonable in light of pertinent clearly established law.

**IV.    Ramos cites no authority for the proposition that sitting on a clearly intoxicated suspect in an assault case to get him in handcuffs is a clearly established constitutional violation.**

Ramos relies on several inapposite cases for the clearly established prong. He cites no Supreme Court authority; the Supreme Court has never specifically held that circuit precedent authority alone could create clearly-established law. *Ramirez v. Escajeda*, 44 F.4th 287, 293 (5th Cir. 2022).

First, *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) holds "we conclude that on the night Officer Rogers stopped Hanks, clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." *Hanks* is inapplicable here, because Ramos was not stopped for a minor traffic violation; instead, he alleges that the suspected crime was an assault. ROA.7. And unlike the plaintiff in *Hanks*, it is conclusively here that ***even after being handcuffed***, Ramos was actively resisting officers by spitting on them as well as kicking them.

Ramos's other cases are similarly predicated on a plaintiff who is either not resisting at all, ceases resisting, or is passively resisting. ROA.311. Resisting being handcuffed is not mere passive resistance. *See, e.g.*, *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (recognizing resisting handcuffing and kicking an officer after being taken to the ground as active resistance); *Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009) (holding officer did not use excessive force where suspect actively resisted being handcuffed and the officer had to use bodyweight to subdue him against the hood of his cruiser).

Viewing the facts at their absolute most generous to Ramos, "on again, off again" resistance is what happened here, which the Fifth Circuit held did not overcome qualified immunity in *Pratt v. Harris County, Tex.*, 822 F.3d 174, 184 (5th Cir. 2016). Indeed, Ramos alleges that he was initially non-compliant to Officer Irwin's request that he stop and tell his side of the story and moved away from the officer. ROA.12. Then when Officer Irwin commanded Ramos to "stop moving away from him," Ramos alleges he complied, but continued to act erratically and kicked and spit on officers *after* he was already in handcuffs. *See* ROA.12, 15-16. Furthermore, in that case, the Fifth Circuit emphasized, "[W]e have never held that hog-tying is a per se unconstitutional technique of controlling a resisting arrestee." *Pratt*, 822 F.3d 184.

Ramos has alleged no facts to suggest that Ramos's admittedly violent, dangerous, and erratic behavior later in this encounter was not already evident to the officers when they first approached him and observed Ramos's obvious intoxication. Recalling that he was suspected of assaulting the complainant, even if he had momentarily paused in an appearance of surrender, Ramos has not pled facts to suggest it was wholly unreasonable for the officers to question whether Ramos's impaired judgment could have caused him to assault the officers as he had the complainant. *See Salazar v. Molina*, 37 F.4th 278, 282 (5th Cir. 2022) (recognizing it may be reasonable for officers to question whether suspect's purported surrender is a ploy). Hence, Ramos has still cited no clearly established law that would overcome Officer Gilbreath's qualified immunity.

**V.    Ramos did not plead facts that would overcome the qualified immunity of Dago, Smith, and Morrison  as to the claim of excessive force in "hogtying" him.**

**A.    Not objectively unreasonable**

**1.    Officers' motions demonstrated that use of leg restraints was not objectively unreasonable because Ramos' alleged injuries were de minimis.**

As Dago, Smith, and Morrison argued in their motions, Ramos's allegations do not plausibly suggest that using leg restraints was excessively unreasonable, because Ramos alleged nothing more than de minimis injury. ROA.71, ROA.120. Ramos alleged that he "had trouble breathing while hogtied" and that he was

"severely bruised and injured as a result of Defendants hogtying him". ROA.17. But Plaintiff did not allege any ongoing breathing problems stemming from this incident. And although Ramos alleged "emotional distress, fear, embarrassment, humiliation, reputational damage, inconvenience and physical pain" as well as "trauma" that "permeates into Mr. Ramos' personal and professional life" ROA.18, such allegations cannot parlay bruising into a cognizable claim of excessive force. *See Tarver*, 410 F.3d at 751–52; *Freeman*, 483 F.3d at 417.

### 2.   Ramos failed to identify allegations of injuries that were more than de minimis.

In response to defendants' motions, Ramos argued, "This is false. Mr. Ramos properly and plausibly pled injuries from hogtying that were more than de minimis." ROA.194. But Ramos did not indicate say what those damages are, or where they are mentioned in his complaint.

Even more significantly, Ramos's response asserted "Mr. Ramos was only charged with offenses arising from his alleged post-arrest conduct." ROA.302. He similarly asserted "All of the offenses that Mr. Ramos was ultimately charged with—one count of harassing a public servant for allegedly spitting at Defendant Gilbreath, and two counts of assaulting a public servant for allegedly kicking Defendants Morrison and Smith—were based on behaviors that he allegedly engaged in after he was already tackled, cuffed, and arrested." ROA.307. In other

words, by Ramos' own admission—despite being handcuffed—Ramos was not subdued. ROA.326-27. In such case, interlocking and application of a spit mask would constitute a measured and ascending response to Ramos's resistance. ROA.326-27. *See Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010) (explaining that the use of force was reasonable when it involved "measured and ascending responses" to a plaintiff's noncompliance)

### 3. The district court erred in holding that Ramos alleged injuries that were more than de minimis.

Nevertheless, the district court held that Ramos sufficiently alleged injuries that were more than de minimis. ROA.368-69. The district court rejected application of this Court's precedent that minor bruising and swelling from handcuffs was only a de minimis ijury that could not support § 1983 liability. ROA.368 (citing *Tarver*, 410 F.3d at 751–52; *Glenn*, 242 F.3d at 314). But this Court recently rejected a similar claim, based in part on the fact that the plaintiff's injuries were de minimis bruising. *Zavala v. Harris County, Tex.*, No. 22-20611, 2023 WL 8058711, at *3 (5th Cir. Nov. 21, 2023) (per curiam) (unpublished). The panel noted that in *Pratt* court recognized that hog-tying is controversial but never held to be per se unconstitutional excessive force. *Id.* Furthermore, where the plaintiff's medical intake form indicated that she was exhibiting inappropriate behavior and was screaming, singing loudly, at times showed some signs of being incoherent, and

possible self-injurious behavior. *Id.* She further alleged that that she was placed in the hog-tie restraint after exhibiting behavior that was inappropriate, disorderly, and self-injurious. *Id.* Finally, the Court held that she did not allege any severe injuries or that she was at risk of death from the hog-tie restraint; instead, she alleged she suffered minor scrapes and bruises, and has mental health issues from the incident. *Id.*

The Court should reach the same conclusion here and hold that Ramos alleged insufficient facts to suggest that Officers Dago, Smith, and Morrison used force that was clearly excessive to the need and, therefore, did not overcome their qualified immunity.

## B.    No clearly established law

### 1.    Officers' motions demonstrated that there is no clearly-established law prohibiting use of leg restraints where the suspect remains unsubdued.

Plaintiff's complaint cited *Gutierrez v. City of San Antonio*, 139 F.3d 441 (5th Cir. 1998) for the proposition that "the practice of hogtying a person who police believe to be experiencing medical or mental comorbidities has been unambiguously banned in the Fifth Circuit for at least 25 years." ROA.9. As Dago, Smith, and Morrison's motions to dismiss argued, *Gutierrez* said no such thing. ROA.73, ROA.122. Indeed, in 2016, the Fifth Circuit emphasized, "[W]e have never held that

hog-tying is a per se unconstitutional technique of controlling a resisting arrestee." *Pratt*, 822 F.3d at 184.

But even if *Gutierrez* stood for the proposition Ramos represented, there are three problems with its application here.

### a)     No United States Supreme Court precedent gives fair notice.

First, the Supreme Court has never held that circuit precedent can clearly establish the law. *D.C. v. Wesby*, 583 U.S. 48, 66 n.8 (2018) ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity."). By citing no factually similar Supreme Court cases, Ramos effectively conceded that Supreme Court precedent offers him no help. *Ramirez v. Escajeda*, 44 F.4th 287, 293 (5th Cir. 2022) (quoting *Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022)). For this reason alone, Ramos's allegations did not overcome Dago, Smith, or Morrison's qualified immunity.

### b)     There is no materially similar precedent because Ramos does not allege positional asphyxia.

Second, the plaintiff must identify a Supreme Court case with fundamentally or materially similar facts. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("The panel majority misunderstood the 'clearly established' analysis: It failed to identify a case

where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment."). Even if circuit precedent could clearly establish the law, the circumstances in *Gutierrez* are materially dissimilar to the facts here, most notably because the suspect who was hogtied was transported face-down and died. Ramos did not allege he was transported in such a position and did not allege that he died from this encounter.

> **c)    *Gutierrez* did not *hold* that there was a constitutional violation but that the court of appeals lacked jurisdiction.**

Third, the decision must *hold* there was some violation of the relevant amendment. *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) . The holding of *Gutierrez* is merely that the court of appeals lacked interlocutory jurisdiction. 139 F.3d at 451. At such a procedural posture, *Gutierrez* does not create clearly established law.

> **2.    Ramos's responses failed to present materially similar law holding a constitutional violation occurred.**

Ramos's response to defendants' motions nevertheless relied on *Gutierrez*, but for the proposition that hogtying is unreasonable when the suspect ***is also*** under the influence of drugs ***and also*** left a prone position for an extended period of time, due to the risk of positional asphyxia. ROA.195.   But even if Ramos's characterization of this authority were accurate, there was no allegation in his

complaint that Ramos was left in the prone position for an extended period of time or that he suffered positional asphyxia.

More importantly, in an attempt to salvage his claims from being *Heck*-barred and subject to the independent intermediary doctrine, Ramos asserted that his criminal charges for kicking and spitting on officers stemmed from Ramos' conduct from after he was handcuffed. ROA.302, ROA.307, ROA.326-27. Ramos cited no authority holding that application of leg restraints was clearly excessive to the need when then the suspect kicked and spit on officers despite being in handcuffs.

### 3.     The district court erred in considering Fifth Circuit precedent at a high level of generality.

The district court denied qualified immunity, asserting that three Fifth Circuit cases clearly established the proposition that "it violates an individual's constitutional rights to hogtie them when there is reason to believe they are on drugs." ROA.370 (citing *Gutierrez*, 139 F.3d at 446; *Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021); *Goode v. Baggett*, 811 F. App'x 227, 232 (5th Cir. 2020). But this reasoning was gauged at a too-high level of generality. Indeed, the district court cited *Gutierrez* for the proposition that it was the ***combination*** of drug use, cocaine psychosis, hog-tying and ***positional asphyxia***, that violated clearly established law. ROA.369 (emphasis added). In fact, in all three cases, the suspect died after being hog tied ***and*** placed in a prone position

for an extended period of time. *Aguirre*, 995 F.3d at 402 (five-and-a-half minutes; *Goode*, 811 F. App'x at 229–30 (prone position 90 minutes); *Gutierrez*, 139 F.3d at 443-44 (prone position 30 minutes). None of these cases stand for the proposition that hog-tying is per se unconstitutional if the officer believes the suspect is on drugs. And in fact, *Goode* construed *Gutierrez* as "finding" that "hog-tying becomes deadly force in certain circumstances—'when a drug-affected person in a state of excited delirium is hog-tied ***and placed face down in a prone position*."** *Goode*, 811 F. App'x at 233–34 (emphasis added). As the defendants argued to the trial court, there were no allegations that Ramos was left in the prone position for an extended period of time or that he suffered positional asphyxia. ROA.212. While Ramos alleged that he was initially placed in this position so that the foot restraints could be applied, Ramos did not allege how long he remained in that position. ROA.16-17. This is in stark contrast to *Goode* where the decedent was left hog-tied in the prone position for 90 minutes. *Goode*, 811 F. App'x at 236.

Furthermore, *Goode* emphasized that the person would need to be "nonviolent" for the use of leg restraints to be objectively unreasonable under the clearly-established law. *Id.* at 237. Here, Ramos' own admission was that the criminal charges he faced for kicking and spitting on officers occurred after he was handcuffed. ROA.307, ROA.326-27. In light of such an admission, Ramos cannot

be said to have been "nonviolent." Indeed, as defendants pointed out in their replies, it is not per se unconstitutional to "hog-tie" an individual who is so combative that he is kicking officers despite being handcuffed. ROA.212, ROA.327 (citing *Pratt*, 822 F.3d at 184. That is exactly what Ramos's responses described. ROA.307, ROA.326-27.

This Court's holding in *Pratt* was based in part on the fact that the decedent' was hog-tied after kicking at officers trying to restrain him and was only hog-tied for a very brief period. *Pratt*, 822 F.3d 174, 184. Neither Ramos nor the district court cited controlling authority finding hog-tying an actively-resisting suspect to have used excessive force in the absence of allegations that the suspect was hog-tied ***and*** left in the prone position for an extended period of time. In the absence of such controlling authority, Ramos's allegations do not overcome Dago, Smith, & Morrison's qualified immunity. This Court should reverse and render.

## Prayer for Relief

For the foregoing reasons, Appellants, Scott Irwin, Jennifer Gilbreath, Hallie Smith, Frederick Morrison, and Gino Dago, ask that this Court reverse the trial court's order and render judgment dismissing Ramos's case, and grant to them all other relief to which they may be entitled.

Respectfully submitted,

ARTURO G. MICHEL
City Attorney
SUZANNE R. CHAUVIN
Chief, General Litigation Section

By:    _/s / Robert W. Higgason_
       Robert W. Higgason
       Senior Assistant City Attorney
       SBN: 09590800
       Christy L. Martin
       Chief, Torts/Civil Rights Section
       SBN: 24041336
       CITY OF HOUSTON LEGAL DEPARTMENT
       900 Bagby, 4th Floor
       Houston, Texas 77002
       Telephone:    832.393.6481
       Facsimile:    832.393.6259
       robert.higgason@houstontx.gov

       *Attorneys for Defendants – Appellants*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on July 22, 2024 on all counsel of record.

*/s/ Robert W. Higgason*
Robert W. Higgason

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(g)(1) and 27(d)(2)(a) in that it contains 10,611 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Calisto MT 14 point font.

*/s/ Robert W. Higgason*
Robert W. Higgason