# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 24-20164

ALBERTO RAMOS,

*Plaintiff-Appellee,*

v.

SCOTT ERWIN; JENNIFER GILBREATH; HALLIE SMITH; FREDERICK MORRISON; GINO DAGO,

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON

## BRIEF FOR PLAINTIFF-APPELLEE

CAITLIN A. HALPERN
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, Texas 77002
(713) 650-8805
chalpern@gibbsbruns.com

KIAH DUGGINS
BRITTANY N. FRANCIS
CIVIL RIGHTS CORPS
1601 Connecticut Avenue, NW, Suite 800
Washington, DC 20009
(202) 894-6133
kiah@civilrightscorps.org
brittany@civilrightscorps.org

*Attorneys for Plaintiff-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certify that the following listed persons and entities as described in Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal. The judge below was the Honorable Keith P. Ellison.

| | |
|---|---|
| Appellants: | Scott Irwin<br>Jennifer Gilbreath<br>Hallie Smith<br>Frederick Morrison<br>Gino Dago |
| Trial Counsel for Appellants: | Christy L. Martin<br>City of Houston Legal Department |
| Appellate Counsel for Appellants: | Robert W. Higgason<br>Christy L. Martin<br>City of Houston Legal Department |
| Appellee: | Alberto Ramos |
| Trial and Appellate Counsel for Appellee: | Kiah Duggins<br>Brittany Nicole Francis<br>Civil Rights Corps<br><br>Caitlin A. Halpern<br>Gibbs & Bruns, L.L.P. |

_/s/Kiah Duggins_
Kiah Duggins
*Attorney for Plaintiff-Appellee*

i

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee Alberto Ramos ("Mr. Ramos") seeks affirmation of the trial court's decision based upon the application of the facts in this case to the law. The allegations forming the basis of this lawsuit are highly factually dependent, and Plaintiff respectfully suggests that this Court would benefit from hearing counsel explain and unpack the evidence the District Court relied on in reaching its determinations on qualified immunity. Mr. Ramos therefore requests oral argument pursuant to Rule 28.2.3.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

TABLE OF AUTHORITIES ...............................................................................v

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................1

STATEMENT OF THE CASE..............................................................................1

A.   Relevant Facts...........................................................................................1

B.   Procedural History ...................................................................................5

C.   Relevant Rulings.......................................................................................6

SUMMARY OF THE ARGUMENT ....................................................................7

ARGUMENT ......................................................................................................11

I.   All of Defendants' legal arguments rely on a factual counter-narrative that contradicts Mr. Ramos' well-pleaded allegations and violates the standard of review articulated in Fed. R. Civ. P. 12(b)(6) ................................................................................................11

    A.   Fed. R. Civ. P. 12(b)(6) requires the Court to view the facts in the light most favorable to the plaintiff.................................................11

    B.   Defendant-Appellants contradict Mr. Ramos' pleadings that he displayed no suspicious, violent, or oppositional behavior before Defendant-Appellants tackled and arrested him ......................13

    C.   Defendant-Appellants contradict Mr. Ramos' pleadings and jury verdict, which state that he was already subdued in the back of a police car with handcuffs and a spit mask when Defendant-Appellants pulled him out of the police car and hogtied him ..........................................................................................14

    D.   Defendant-Appellants contradict Mr. Ramos' pleadings that his injuries, for which medical professionals hospitalized him, were more than *de minimis*.................................................................16

II.    Mr. Ramos Plausibly Alleged that Defendant-Appellants Violated
       His Clearly Established Right to be Free from False Arrest .........................17

       A.    *Heck v. Humphrey* does not bar Mr. Ramos' false arrest claim
             because he has no criminal convictions that contradict his
             false arrest claim..................................................................................17

       B.    No "independent intermediary" has ever determined that
             there was probable cause for Defendant-Appellants to tackle,
             sit on, and handcuff Mr. Ramos as he walked peacefully on
             the street, because there was none.......................................................19

       C.    Mr. Ramos and the District Court cited law clearly
             establishing that stopping or arresting someone solely based
             on their race and/or sex violates Fourth Amendment
             reasonable suspicion and probable cause standards............................20

III.   Mr. Ramos Plausibly Alleged that Defendant-Appellants Violated
       His Clearly Established Right to Be Free from Excessive Force by
       Tackling Him, Particularly During an Arrest Made Without
       Probable Cause ...............................................................................................24

       A.    Mr. Ramos pleaded that his injuries from the tackle arrest
             were more than "de minimis"..............................................................23

       B.    The Fifth Circuit has clearly established that immediately
             resorting to overwhelming force to execute an arrest in the
             face of peaceful behavior and compliance violates the Fourth
             Amendment ...........................................................................................26

IV.    Mr. Ramos Plausibly Alleged that the Defendant-Appellants
       Violated His Clearly Established Right to be free from Excessive
       Force Via Hogtying .......................................................................................28

       A.    Mr. Ramos' injuries from being hogtied were more than "de
             minimis"................................................................................................28

       B.    The Fifth Circuit has clearly established that hogtying a
             medically vulnerable person who presents no threat to safety
             violates the law.....................................................................................29

CONCLUSION AND PRAYER FOR RELIEF ......................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aguilar v. Robertson,*
  512 Fed. App'x 444 (5th Cir. 2013) ...................................................26

*Aguirre v. City of San Antonio,*
  995 F.3d 395 (5th Cir. 2021) ................................................ 26, 30, 31

*Arnold v. Williams,*
  979 F.3d 262 (5th Cir. 2020) ...................................................12

*Arthur v. Officer Mohammed Bellahna,*
  2020 WL 6292453 (S.D. Tex. Oct. 27, 2020) ...................................25

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...........................................................11

*Backe v. LeBlanc,*
  691 F.3d 645 (5th Cir. 2012) ...................................................12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...........................................................11

*Cloud v. Stone,*
  993 F.3d 379 (5th Cir. 2021) ...................................................27

*Collier v. Montgomery,*
  569 F.3d 214 (5th Cir. 2009) ...................................................27

*Collin v. Morgan Stanley Dean Witter,,*
  224 F.3d 496 (5th Cir. 2000) ...................................................12

*Culbertson v. Lykos,*
  790 F.3d 608 (5th Cir. 2015) ...................................................11

*Dist. of Columbia v. Wesby,*
  583 U.S. 48 (2018) ............................................................26

*Espinal v. City of Houston,*
  96 F.4th 741 (5th Cir. 2024) ...................................................19

*Glenn v. City of Tyler,*
  242 F.3d 307 (5th Cir. 2001) ...................................................25

*Goode v. Baggett*,
   811 Fed. App'x 227 (5th Cir. 2020) ............................................................... 29, 31

*Goodson v. City of Corpus Christi*,
   202 F.3d 730 (5th Cir. 2000) .................................................................... 9, 21, 23

*Gutierrez v. City of San Antonio*,
   139 F.3d 441 (5th Cir. 1998) ........................................................................ 10, 29

*Hanks v. Rogers*,
   853 F.3d 738 (5th Cir. 2017) ................................................................................26

*Heck v. Humphrey*,
   12 U.S. 477 (1996) ...................................................................................... 17, 18

*Heck v. Humphrey*,
   512 U.S. 477 (1994) ............................................................................................8

*Heinze v. Tesco Corp.*,
   971 F.3d 475 (5th Cir. 2020) ...............................................................................12

*Kalina v. Fletcher*,
   522 U.S. 118 (1997) ...........................................................................................12

*Lampton v. Diaz*,
   639 F.3d 223 (5th Cir. 2011) ...............................................................................12

*Lewis v. Woods*,
   848 F.2d 649 (5th Cir. 1988) ...............................................................................24

*Lovick v. Ritemoney Ltd.*,
   378 F.3d 433 (5th Cir. 2004) ...............................................................................11

*Memphis Cmty. Sch. Dist. v. Stachura*,
   477 U.S. 299 (1986) ...........................................................................................24

*Poullard v. Gateway Buick GMC LLC*,
   3:20-CV-2439-B, 2021 WL 2376721 (N.D. Tex. June 10, 2021) ......................20

*Pratt v. Harris Cnty., Tex.*,
   822 F.3d 174 (5th Cir. 2016) ...............................................................................27

*Smith v. Heap*,
   31 F.4th 905 (5th Cir. 2022) ...............................................................................25

*Sullivan v. Garza Cnty. Sheriff's Office*,
   5:23-CV-049-H-BQ, 2024 WL 133425 (N.D. Tex. Jan. 11, 2024) ....................20

*Tarver v. City of Edna*,
    410 F.3d 745 (5th Cir. 2005) .................................................................25

*Trammell v. Fruge*,
    868 F.3d 332 (5th Cir. 2017) .................................................. 9, 26, 31

*Tucker v. City of Shreveport*,
    998 F.3d 165 (5th Cir. 2021) .................................................................27

*United States v. Alvarez*,
    40 F.4th 339 (5th Cir. 2022) .......................................................... 21, 22

*United States v. Jones*,
    619 F.2d 494 (5th Cir. 1980) ...............................................................21

*United States v. Jordan*,
    232 F.3d 447 (5th Cir. 2000) ...............................................................23

*United States v. Rias*,
    524 F.2d 118 (5th Cir. 1975) ......................................................... 21, 23

*White v. U.S. Corrections, L.L.C.*,
    996 F.3d 302 (5th Cir. 2021) ...............................................................12

*Zavala v. Harris County, Tex.*,
    2023 WL 8058711 (5th Cir. Nov. 21, 2023) ................................. 28, 29

## Statutes & Other Authorities:

U.S. Const., Amend. IV ................................................................... *passim*

U.S. Const., Amend. XIV ....................................................................29

42 U.S.C. § 1983 ........................................................................... 5, 12

Fed. R. Civ. P. 8(a)(2) .........................................................................11

Fed. R. Civ. P. 12(b)(6).................................................................. *passim*

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court correctly held that officers violate clearly established law when they tackle and arrest a person who has peaceably complied with a law enforcement command, solely because that person is a "Hispanic male."

2. Whether the District Court correctly held that officers violate clearly established law when they hogtie a person who is already restrained and in medical distress.

3. Whether the District Court correctly held that *Heck* does not apply where a person's criminal conviction for post-arrest conduct is compatible with claims that the same person was falsely arrested and subjected to excessive force.

4. Whether the District Court correctly held that alleged post-arrest conduct does not insulate officers from a false arrest claim under the independent intermediary doctrine.

## STATEMENT OF THE CASE

### A. Relevant Facts

On July 11, 2021, Defendant-Appellant Officer Scott Irwin ("Irwin") received a call from a Houston Police Department ("HPD") dispatcher notifying him of a 911 call alleging that a "drunk" "Hispanic" male had committed an assault against a "Hispanic" female outside of a bar. ROA.10. Irwin did not receive any other physical

1

descriptors of the alleged assailant, such as height, weight, clothing, or hair color. ROA.10. Irwin was driving a police car in the vicinity of the bar when he was flagged down by a group of people. ROA.11. When Irwin stopped the car, the group informed him that the alleged perpetrator was merely arguing and had not engaged physically with the woman. ROA.11 Irwin repeated that information back to dispatch. ROA.11.

Irwin saw Mr. Ramos, who is a Hispanic male, shortly thereafter. ROA.11. Mr. Ramos is also a Houston resident and a loving son, sibling, and uncle. ROA.7, ROA.11. Mr. Ramos was walking on a public sidewalk by himself with no Hispanic woman nearby. ROA.11. He did not exhibit any erratic or strange behavior while walking on the sidewalk—he simply walked. ROA.11. Irwin pulled his police car alongside Mr. Ramos and, without asking any investigative questions or referring to the 911 call, immediately asked Mr. Ramos to tell him his "side of the story." ROA.12. Because Mr. Ramos was unaware of the 911 call, he did not understand why Irwin was speaking to him or what "story" Irwin was referring to. ROA.12. Nevertheless, when Irwin exited the car and ordered Mr. Ramos to stop moving, Mr. Ramos immediately and fully complied. ROA.12. Irwin used his radio to tell dispatch that Mr. Ramos had complied with his order and stopped. ROA.12.

Despite Mr. Ramos' compliance with Irwin's command to stop, Irwin suddenly grabbed Mr. Ramos' arm and tackled him to the concrete, placing him

under arrest within mere seconds. ROA.12. Defendant-Appellant Gilbreath ("Gilbreath"), who had just arrived on the scene, helped Irwin tackle Mr. Ramos. ROA.13. Gilbreath sat on top of Mr. Ramos' body while he lay on the ground and while Irwin handcuffed him. ROA.13. Mr. Ramos spit at Gilbreath while she sat on top of his body and while Irwin handcuffed him. ROA.241. Defendant-Appellants put a spit mask on Mr. Ramos. ROA.16. Gilbreath charged Mr. Ramos with Harassment of a Public Servant for spitting and, after a jury trial, he was ultimately convicted. ROA.91. ROA.241.

Officers then placed Mr. Ramos securely inside the back of a police car. ROA.14. Eleven officers were at the scene by this point, including Defendant-Appellant Dago ("Dago"), Defendant-Appellant Smith ("Smith"), and Defendant-Appellant Morrison ("Morrison). ROA.14-16. Although Mr. Ramos was physically subdued, he was in a heightened and confused emotional state, breathing irregularly, and crying out in pain. ROA.15-16. Mr. Ramos' vulnerability was so obvious that Irwin commented on his fragile physical and emotional condition on the scene (ROA.25), and Gilbreath, Morrison, and Smith commented on it in subsequent reports. ROA.15-16. Morrison and Smith later charged Mr. Ramos with Assault on an Officer for allegedly kicking at them after Irwin and Gilbreath had arrested him

(ROA.93-96), but a jury found Mr. Ramos not guilty of kicking at anyone. ROA.237-239.

Even though Mr. Ramos was handcuffed, secured inside a police car, and wearing a spit mask, Dago, Smith, and Morrison pulled Mr. Ramos back out of the police car. ROA.16. They laid him prone on the concrete and put leg restraints on him. ROA.16. Dago, Smith, and Morrison attempted to tie Mr. Ramos' handcuffs to his leg restraints by pulling Mr. Ramos' wrists and ankles towards his back, causing Mr. Ramos to scream in pain. ROA.16. Dago, Morrison, and Smith failed to secure the handcuffs to Mr. Ramos' leg restraints the first time, and Mr. Ramos screamed in pain throughout their attempt. R O A . 1 6 . Eventually Dago, Smith, and Morrison succeeded in tying Mr. Ramos' handcuffs to his leg restraints behind his back, thereby hogtying him. ROA.17.

As a result of being tackled and hogtied on concrete, Mr. Ramos' breathing was restricted and erratic (ROA.15, 17), he repeatedly complained of pain and displayed symptoms of physical distress (ROA.8, 13, 15, 21), he experienced severe bruising on his ribcage and his arm (ROA.17), and he was hospitalized for his injuries. ROA.9, 17, 19. Mr. Ramos also suffered embarrassment, reputational damage, and trauma that permeates his personal and professional life. ROA.18, 21.

**B. Procedural History**

On July 10, 2023, Mr. Ramos filed a Complaint under 42 U.S.C. § 1983 against HPD Officers Scott Irwin, Gino Dago, Frederick Morrison, Hallie Smith, and Jennifer Gilbreath for violating his Fourth Amendment Rights to be free from unlawful arrest and excessive force. ROA.7-22. In separate but nearly identical motions, Defendant-Appellants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ROA.59-97, 108-143, 250-296. Mr. Ramos filed Responses in Opposition to Defendants' Motions to Dismiss. ROA.177-202, 297-316. Defendant-Appellants filed Replies in support of their Motions to Dismiss. ROA.204-214, 317-327. Mr. Ramos filed Motions for Leave to File Sur-Replies (ROA.217-220, 329-332) which Judge Ellison granted (ROA.227, 342) and filed Sur-Replies shortly thereafter. ROA.228-233, 343-351.

Gilbreath charged Mr. Ramos with Harassment of a Public Servant for spitting at Gilbreath after Gilbreath and Irwin arrested him. ROA.91. Morrison and Smith charged Mr. Ramos with two counts of Assault on an Officer for allegedly kicking at them after Irwin and Gilbreath arrested him. ROA.93-96. On January 9, 2024, a jury found Mr. Ramos not guilty of kicking at Morrison and Smith and guilty of spitting at Gilbreath. ROA.237-247. Mr. Ramos notified the District Court of this ruling on January 16, 2024. ROA.234-235.

## C. Relevant Rulings

On March 18, 2024, the District Judge Keith Ellison filed an order denying in part and granting in part Defendants' Motions to Dismiss. ROA.352-370. Judge Ellison declined to dismiss Mr. Ramos' false arrest claim and determined that qualified immunity did not shield Defendants' conduct, because "[a] suspect's race and sex alone cannot provide reasonable suspicion—and, thus, not the higher standard of probable cause—for an officer to stop them." ROA.360-363. Judge Ellison also declined to dismiss Mr. Ramos' excessive force claim related to the tackle arrest and, again, denied qualified immunity, finding that "the deluge of authority and obviousness of the violation is such that no reasonable officer . . . would have concluded that it was constitutionally permissible to grab and tackle an individual to the ground where the individual had committed no crimes and immediately complied with orders." ROA.365. Finally, Judge Ellison declined to dismiss Mr. Ramos' excessive force claim related to hogtying and, again, denied qualified immunity, finding that "*Guitierrez*, *Goode*, and *Aguirre* . . . [each] standing alone could have supplied Defendant-Appellants with 'fair notice' that their conduct was unconstitutional; together, the three cases uncontrovertibly provided such notice." ROA.369-70. Judge Ellison partly granted the motions to dismiss based on

the uncontroversial notion that the Defendant-Appellants who were not involved in ••• ••of these constitutional violations cannot be liable for them. ROA.370.

## SUMMARY OF THE ARGUMENT

Plaintiff Alberto Ramos sues Houston Police Department officers who tackled and arrested him solely because he is a Hispanic man and then hogtied him without any legal basis to do so. As explained below, Mr. Ramos has plausibly alleged that Defendant-Appellants' actions violated his constitutional rights and were objectively unreasonable under clearly established law. Defendant-Appellants spend the majority of their brief attempting to recast the facts, contort the law, and distract the Court with inapplicable procedural bars. None of these misguided efforts succeed; Defendants' arguments all fail as a matter of law.

First, as required by Fed. R. Civ. P. 12(b)(6), the District Court properly refused to accept Defendant-Appellants' factual counter-narrative that improperly contradicts Mr. Ramos' well-pleaded allegations. Specifically, Defendant-Appellants contradict Mr. Ramos' pleadings that: 1) he displayed no suspicious, violent, or oppositional behavior before Defendant-Appellants tackled and arrested him; 2) officers started to believe Mr. Ramos was under the influence of a drug after

they had already arrested him but before they hogtied him; 3) Mr. Ramos was already

subdued in the back of a police car with handcuffs and a spit mask when Defendant-

Appellants pulled him out of the police car and hogtied him; and 4) his injuries, for

which medical professionals hospitalized him, were more than de minimis. This

Court must disregard Defendant-Appellants' counterfactuals and make its legal

determinations based on the facts as Mr. Ramos pleaded them.

Second, the District Court properly denied Defendant-Appellants' motions to

dismiss Mr. Ramos' false arrest claim. Defendant-Appellants contend that this claim

should be dismissed on the grounds that it is barred by *Heck v. Humphrey*, 512 U.S.

477 (1994), the "independent intermediary doctrine," and qualified immunity.

Defendants' arguments are wrong on the facts and the law. Mr. Ramos' criminal

charges stem from *post-arrest* conduct. Mr. Ramos' false arrest claim is not *Heck*-

barred because no magistrate judge, grand jury, or other "independent intermediary"

ever determined that Defendant-Appellants had probable cause to tackle and arrest

Mr. Ramos in the first instance. In other words, there would be no tension between

1) a finding that Defendant-Appellants violated Mr. Ramos' Fourth Amendment

rights with their tackle arrest and; and 2) a finding in Mr. Ramos' criminal case that

he subsequently committed a crime. Moreover, Mr. Ramos did not receive any

criminal charges related to the allegations in the 911 call. As for qualified immunity,

8

any reasonable officer would have been on notice that arresting a person based solely on their appearance as a Hispanic male violated clearly established law. Defendant-Appellants had no lawful basis to tackle and arrest Mr. Ramos, and qualified immunity offers them no shield.

Third, the District Court was correct in denying Defendant-Appellants' motion to dismiss Mr. Ramos' excessive force claim related to the tackle arrest. Defendant-Appellants move to dismiss this claim because they believe his injuries were "de minimis" and that their actions are shielded by qualified immunity. They are wrong on both counts. The Complaint establishes that Mr. Ramos' injuries, for which he was hospitalized, were not "de minimis." In any case, Supreme Court and Fifth Circuit precedent make clear that plaintiffs can receive compensatory damages for emotional injuries and nominal damages for constitutional injuries. As for qualified immunity, the Fifth Circuit has clearly established that it is unconstitutional and excessive to use force (such as a tackle) during an arrest: 1) in the absence of probable cause; or 2) when the arrestee displays only "minimal physical resistance." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000); *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017). Irwin and Gilbreath did not have probable cause to tackle and arrest Mr. Ramos, but they did so anyway, despite Mr. Ramos complying with their orders and exhibiting zero resistance. There was no lawful

basis for the force Defendant-Appellants used, and there is no basis now for qualified immunity to shield their conduct.

Lastly, the District Court was correct in denying Defendant-Appellants motions to dismiss Mr. Ramos' excessive force claim related to hogtying. Defendant-Appellants move to dismiss this claim because they believe that: 1) Mr. Ramos' injuries were "de minimis;" 2) qualified immunity shields them from liability; and 3) the Fifth Circuit cannot make clearly established law. As with the "tackle arrest" excessive force claim, Mr. Ramos' injuries from hogtying, for which he was hospitalized, were not de minimis. In any event, Mr. Ramos could sustain the claim even if his damages were nominal. Qualified immunity does not shield Defendant-Appellants from consequence for hogtying Mr. Ramos. The Fifth Circuit—which has the authority to clearly establish the law—clearly established nearly 30 years ago that it is unconstitutional to hogtie medically vulnerable people who pose no safety risk. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446–47 (5th Cir. 1998). Defendant-Appellants had no lawful basis to hogtie Mr. Ramos, and there is no basis now for qualified immunity to shield their conduct.

The District Court's decision should be affirmed.

# ARGUMENT

I. **All of Defendants' legal arguments rely on a factual counter-narrative that contradicts Mr. Ramos' well-pleaded allegations and violates the standard of review articulated in Fed. R. Civ. P. 12(b)(6).**

A. <u>Fed. R. Civ. P. 12(b)(6) requires the Court to view the facts in the light most favorable to the plaintiff.</u>

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Together, these rules demand "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is deemed facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This Court has noted that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted).

In considering a motion to dismiss, a District Court must view the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded factual

allegations and drawing all reasonable inferences in the plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004); *WhiteU.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021) (citing *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020)). At this stage of the litigation, "a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins,* 224 F.3d at 498.

When a plaintiff pleads a § 1983 claim that implicates qualified immunity, the complaint "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). This Court has made clear that this standard is *not* heightened: "[A] plaintiff must plead qualified immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Id*. Therefore, "[i]n determining immunity, [the court] must accept the allegations of [plaintiff]'s complaint as true." *Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 122 (1997)). The District Court unequivocally followed the standard for adjudicating a Rule 12(b)(6) motion to dismiss when it denied Defendant-Appellants' motions to dismiss. This Court must do the same.

B. <u>Defendant-Appellants contradict Mr. Ramos' pleadings that he displayed no suspicious, violent, or oppositional behavior before Defendant-Appellants tackled and arrested him.</u>

Mr. Ramos pleaded that he displayed no suspicious, violent, or oppositional behavior before Defendant-Appellants Irwin and Gilbreath tackled and arrested him. ROA.10, 11, 12. As set forth in the complaint, he was walking peacefully down a public sidewalk before Irwin spotted Mr. Ramos and asked him to stop. ROA.11-12. The only information that could have connected him to the underlying 911 call was his Hispanic race and male sex. ROA.8, 10-11. He complied with Irwin's command to stop despite having no information about why Irwin was stopping him. ROA.12. Neither Irwin nor Gilbreath asked any questions specifically related to the 911 call before they tackled and arrested him. In other words, Mr. Ramos' pleadings made clear that he exhibited no pre-arrest behavior that would indicate that he was under the influence of a drug or that there was any other lawful basis for arrest in the first instance. Mr. Ramos also pleaded that he began having trouble breathing and exhibiting erratic (but non-threatening) behavior *after* Irwin and Gilbreath tackled and handcuffed him but before Morrison, Dago, and Smith hogtied him. ROA.15-16. All of Defendant-Appellants' probable cause statements at the time of the incident confirm this timeline: Mr. Ramos "appeared to be under the influence of some unknown drug" *after* "Ofc. apprehend," meaning after they had already

13

arrested Mr. Ramos. ROA.78-89. Despite these pleadings, Defendant-Appellants insinuate that Mr. Ramos: committed the crime alleged in the 911 call;[1] appeared to be under the influence of a drug;[2] did not comply with Irwin's command to stop;[3] resisted arrest;[4] was "admittedly violent, dangerous, and erratic"[5] before being arrested. Defendant-Appellants use this counter-narrative to argue that they had probable cause and/or reasonable suspicion to arrest Mr. Ramos in the first instance.[6] Mr. Ramos pleaded that they did not.   ROA.18-19. This Court must disregard Defendants-Appellants' counter-factual narrative and, according to Fed. R. Civ. P. 12(b)(6), use the facts that Mr. Ramos pleaded to make its legal determinations.

      C. <u>Defendant-Appellants contradict Mr. Ramos' pleadings and jury verdict, which state that he was already subdued in the back of a police car with handcuffs and a spit mask when Defendant-Appellants pulled him out of the police car and hogtied him.</u>

Mr. Ramos pleaded that Defendant-Appellants had already physically subdued him before Dago, Smith, and Morrison gratuitously hogtied him. ROA.14-16. As detailed in the complaint, Defendant-Appellants handcuffed Mr. Ramos, placed a spit mask on him, and placed him inside of a police car. ROA.16. The

---

[1] Defendant-Appellants Brief at ECF 50-51, 56
[2] Id.
[3] Id. at ECF 48
[4] Id. at ECF 51-52
[5] Id. at ECF 56
[6] Id. at ECF 51

14

officers outnumbered him by 11 to 1 by the time they placed him inside of a police car in handcuffs and a spit mask. ROA.15. Irwin, Dago, Morrison, and Smith remarked on the scene and in post-arrest reports that they thought Mr. Ramos was medically vulnerable. ROA.15-16. Even though Morrison and Smith charged Mr. Ramos with Assault on an Officer for allegedly kicking at them while they tried to apply leg restraints (ROA.93-96), a jury found Mr. Ramos not guilty of kicking at anyone. ROA.237-239. Mr. Ramos alerted the District Court that a jury found him not guilty of allegedly kicking at Defendant-Appellants. ROA.234-235. Further, he pleaded that, despite being physically restrained in a police car with handcuffs and a spit mask, Dago, Morrison, and Smith pulled him out of the car and gratuitously hogtied him. ROA.15-17. Despite these pleadings, Defendant-Appellants repeatedly promote a counter-narrative that they hogtied Mr. Ramos because he was not subdued,[7] kicked at officers[8] (and admitted to doing so),[9] and resisted arrest.[10] This counter-narrative contradicts Mr. Ramos' pleadings. This Court must disregard Defendants-Appellants' counter-factual narrative and, according to Fed. R. Civ. P. 12(b)(6), use the facts that Mr. Ramos pleaded to make its legal determinations.

---

[7] Defendants-Appellants' Original Brief at 57-58.
[8] Id. at ECF 57-58, 62-64
[9] Id. at ECF 58, 63
[10] Id.

D. Defendant-Appellants contradict Mr. Ramos' pleadings that his injuries, for which medical professionals hospitalized him, were more than *de minimis*.

Mr. Ramos pleaded that the injuries he suffered from Defendant-Appellants' violence were serious and resulted in his hospitalization. ROA.9, 17, 19.  Per the complaint, he displayed symptoms of positional asphyxia, which included restricted, labored, and irregular breathing, and he had severe bruising on his arm and ribcage. ROA.15, 17. He screamed in pain throughout his encounter with all Defendant-Appellants, and medical professionals hospitalized him for his injuries. ROA.8, 9, 13, 15, 17, 19, 21. Mr. Ramos suffered lasting emotional trauma as a result of Defendant-Appellants' violence against him. ROA.18, 21. Despite these pleadings, Defendant-Appellants promote a counter-narrative that Mr. Ramos did not plead any injuries,[11] that any injuries that he did plead were *de minimis*,[12] and that Mr. Ramos might have injured himself.[13] Defendant-Appellants promote this counter-narrative to bolster an argument that Mr. Ramos did not plead all of the elements of his excessive force claims.[14] He did.  ROA.19-20.  This Court must disregard

---

[11] Defendants-Appellants' Original Brief at ECF 52, 57
[12] Id. at ECF 52-53, 56-59
[13] Id. at ECF 53
[14] Id.  at ECF 53, 59

Defendants-Appellants' counter-factual narrative and, according to Fed. R. Civ. P. 12(b)(6), use the facts that Mr. Ramos pleaded to make its legal determinations.

In conclusion, the law requires the Court to consider the facts as Mr. Ramos pleaded them. The Defendant-Appellants' brief repeatedly misstates that facts that Mr. Ramos pleaded and promotes counter-narratives instead. This Court must therefore disregard Defendant-Appellants' counter-narratives and use the facts that Mr. Ramos pleaded to make its legal determinations.

## II.    Mr. Ramos Plausibly Alleged that Defendant-Appellants Violated His Clearly Established Right to be Free from False Arrest.

### A. _Heck v. Humphrey_ does not bar Mr. Ramos' false arrest claim because he has no criminal convictions that contradict his false arrest claim.

Gilbreath and Irwin argue that Mr. Ramos' false arrest claim is barred by the doctrine set out in _Heck v. Humphrey_, 12 U.S. 477 (1996).[15] As the District Court already concluded, Defendants' contention is simply wrong. ROA.357-359. _Heck_ only applies where a civil judgment in a plaintiff's favor "would necessarily imply the invalidity of his conviction or sentence." _Heck,_ 12 U.S. 477, 487. As Judge Ellison succinctly stated, Mr. Ramos' false arrest claim is not Heck-barred because he "never received criminal charges related to the 911 call, and his state criminal

---

[15] Defendant-Appellants' Original Brief  at ECF 44-45

charge is based on conduct that occurred after his initial arrest. Therefore, a judgment in favor of Ramos as to his false arrest claim would not 'necessarily imply the invalidity' of his state criminal conviction." ROA.357; *Heck,* 12 U.S. 477, 487. In other words, there would be no tension between: 1) a finding here that Defendant-Appellants violated Mr. Ramos' Fourth Amendment rights with their tackle arrest and; and 2) the finding in Mr. Ramos' criminal case that he subsequently spit on Gilbreath.

Judge Ellison's analysis correctly relied on Mr. Ramos' pleadings, which state that Mr. Ramos never received criminal charges related to the 911 call (ROA.10, 17); all three of his criminal charges were for post-arrest conduct (ROA.11-12, 78-89); a jury acquitted Mr. Ramos of two criminal charges (ROA.237-239), and; Mr. Ramos notified the District Court that his Assault on an Officer charges were terminated in his favor. ROA.234-235. Accordingly, a civil judgment in Mr. Ramos' favor simply would not implicate or contradict the jury verdict in his criminal case.

The District Court correctly found that *Heck v. Humphrey* does not bar Mr. Ramos' false arrest claim, and this Court should do the same.

B. <u>No "independent intermediary" has ever determined that there was probable cause for Defendant-Appellants to tackle, sit on, and handcuff Mr. Ramos as he walked peacefully on the street, because there was none.</u>

Defendant-Appellants next attack Mr. Ramos' unlawful arrest claim under the "independent intermediary" doctrine, arguing that the magistrate's "probable cause findings" in Mr. Ramos' criminal case have "br[oken] the chain of causation" and that he is therefore barred from relief.[16] Defendants' "independent intermediary" argument fails for two reasons. First, they fail because Mr. Ramos' criminal proceedings concerned only his alleged *post*-arrest conduct. ROA.78-89, 93-96, 241. As Judge Ellison stated, "the charges—and the Magistrate Judge's probable cause finding—focused solely on Ramos' actions that *followed* his initial arrest . . . Under the alleged facts, no independent intermediary can be said to have broken the causal chain." ROA.362. Second, they fail because Mr. Ramos pleaded that there was no probable cause for Irwin and Gilbreath to arrest him in the first instance. ROA.10-13. By suggesting that Mr. Ramos' behavior gave Irwin and Gilbreath probable cause to stop and/or arrest Mr. Ramos, Defendants improperly contract his pleadings. *See supra* Section I.A; Section I.B.

---

[16] Defendant-Appellants' Original Brief at ECF 45-48

Defendant-Appellants' legal citations are inapposite. The fact that Mr. Ramos received criminal charges for post-arrest conduct distinguishes Mr. Ramos' case from *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024), and *Poullard v. Gateway Buick GMC LLC*, 3:20-CV-2439-B, 2021 WL 2376721, at *1 (N.D. Tex. June 10, 2021). In each of those cases, Defendant-Appellants arrested and indicted plaintiffs for conduct that took place *prior* to arrest. Another case cited by Defendant-Appellants, *Sullivan v. Garza Cnty. Sheriff's Office*, 5:23-CV-049-H-BQ, 2024 WL 133425 (N.D. Tex. Jan. 11, 2024), does not mention an independent intermediary at all. These cases do not and cannot stand for the proposition that Mr. Ramos' claims are foreclosed.

The District Court therefore correctly rejected Defendants' independent intermediary argument, and this Court should do the same.

    C.  <u>Mr. Ramos and the District Court cited law clearly establishing that stopping or arresting someone solely based on their race and/or sex violates Fourth Amendment reasonable suspicion and probable cause standards.</u>

Mr. Ramos pleaded that Defendant-Appellants arrested him solely based on his Hispanic race and male sex considering he was compliant, peaceful, and unsuspicious before the arrest, and considering Irwin and Gilbreath did not conduct any questioning related to the 911 call before the arrest. ROA.10-13. Defendant-Appellants argue that Mr. Ramos did not cite any law clearly establishing that it

violates the Fourth Amendment to arrest a person solely based on their race and sex.[17] He did. ROA.18, 182, 189, 302, 308-309, 338. In the Fifth Circuit, "[r]easonable suspicion to stop someone suspected of criminal activity is a low threshold," but it "require[s] officers to have information more specific than 'a Hispanic male who once rode away from police on a bicycle with large handlebars in a particular area' . . . That open-ended description would effectively authorize random police stops, something the Fourth Amendment abhors." *Alvarez*, 40 F.4th at 343. Other cases from this circuit affirm this foundational principle. *See e.g., Goodson*, 202 F.3d at 737 (description of potential suspect as "tall, heavy-set, white man" would be "too vague, and fit too many people," to create reasonable suspicion); *United States v. Jones*, 619 F.2d 494, 497 (5th Cir. 1980) (no reasonable suspicion or probable cause where suspect matched general description: "black male, 5 feet 6 inches to 5 feet 9 inches tall and weighing between 150 and 180 pounds, with a medium afro hair style, who was wearing jeans and a long denim jacket"); *United States v. Rias*, 524 F.2d 118, 119 (5th Cir. 1975) (no reasonable suspicion or probable cause where suspects matched description: "two black males in a black or blue Chevrolet."). The District Court agreed with this Court, finding that

---

[17] Defendant-Appellants' Original Brief at ECF 52

"[a]suspect's race and sex alone cannot provide reasonable suspicion—and, thus, not the higher standard of probable cause—for an officer to stop them." ROA.361. Thus, the District Court was correct in finding that the Fifth Circuit has clearly established that arresting a person solely based on their Hispanic race and male sex violates the Constitution.

Defendant-Appellants say that this Court should analyze their decision to arrest Mr. Ramos under a reasonable suspicion standard instead of a probable cause standard, and then argue that Mr. Ramos' "temporal and geographic" proximity to the 911 call provided reasonable suspicion.[18] This is flatly incorrect.[19] Mr. Ramos' opposition briefs below explained that the Fifth Circuit has repeatedly held that arrests based on vague, race-based descriptions, even when made within a close geographic and temporal proximity to a reported crime, are unlawful and fail to meet the reasonable suspicion or probable cause standard. ROA.223-224, 230-231. In *Alvarez* and *Rias*, the Fifth Circuit held that there was no reasonable suspicion to arrest people who were geographically proximate to an alleged crime and who matched more specific descriptions than the one that Irwin and Gilbreath relied on in Mr. Ramos' case. *See Alvarez,* 40 F.4th at 343 (plaintiff matched description of

---

[18] Defendants-Appellants Original Brief at ECF 48-52.
[19] Id. at 50

"'Hispanic male' who had 'run from officers' on a 'bicycle with large handlebars' in the 'area of Leopard and Up River'"); *Rias,* 524 F.2d at 121 (plaintiffs matched description of "two black males in a black or blue Chevrolet" with "a Farm Store in the general vicinity."). Similarly, in *Goodson,* the Fifth Circuit held that there was no reasonable suspicion to arrest a person soon after a crime allegedly took place based on a more specific description than the one given by dispatch in Mr. Ramos' case. *See* 202 F.3d at 737. Defendant-Appellants rely on *United States v. Jordan*, which is a criminal case, for their claim that they had reasonable suspicion to arrest Mr. Ramos.[20] 232 F.3d 447, 448 (5th Cir. 2000). However, the plaintiff in *Jordan* did not comply with officers' commands and instead ran away from officers at "a full sprint." *Id.* Mr. Ramos, on the other hand, pleaded that he demonstrated unsuspicious behavior and complied with officers' commands prior to the arrest (ROA.10-13) and that he did not exhibit erratic (but nonetheless non-harmful behavior) until *after* Irwin and Gilbreath had already arrested him. ROA.15-16, 78-79. *Jordan* has no bearing on Defendants' decision to arrest Mr. Ramos.

Accordingly, the District Court correctly found that: 1) Mr. Ramos plausibly pleaded he was arrested solely because he is Hispanic and male; and 2) such an arrest

---

[20] Defendant-Appellants' Original Brief at ECF 51-52

is unreasonable under clearly established law in the Fifth Circuit. This Court should conclude the same.

### III. Mr. Ramos Plausibly Alleged that Defendant-Appellants Violated His Clearly Established Right to Be Free from Excessive Force by Tackling Him, Particularly During an Arrest Made Without Probable Cause.

#### A. Mr. Ramos pleaded that his injuries from the tackle arrest were more than "de minimis."

Defendant-Appellants claim that because Mr. Ramos' physical injuries are "de minimis," they did not subject Mr. Ramos to excessive force when tackling him upon arrest. As explained *supra* in Section I.D., this counter-factual contradicts Mr. Ramos' detailed pleadings describing the injuries, physical pain, and emotional distress he suffered and must be disregarded. *See also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("[C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . . personal humiliation, and mental anguish and suffering.'"). Even if Mr. Ramos had not pleaded those physical and emotional injuries, he pleads a violation of his Fourth Amendment constitutional rights. ROA.19-20. Such constitutional injuries are "never de minimis" and would at least entitle Mr. Ramos to nominal damages. *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). The District Court agreed, finding that "Irwin and Gilbreath's use of force

was objectively unreasonable, and that Ramos' resulting injuries were more than *de minimis*." ROA.366.

The cases that Defendant-Appellants cite address significantly less severe injuries for plaintiffs whom officers had a lawful basis to stop or arrest. *See Smith v. Heap*, 31 F.4th 905, 912 (5th Cir. 2022) (plaintiff alleging no physical or psychological injuries whatsoever); *Arthur v. Officer Mohammed Bellahna*, 2020 WL 6292453, at *3 (S.D. Tex. Oct. 27, 2020) (plaintiff alleging an injury with no hospitalization); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (same); *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001) (same). Defendant-Appellants proffer no relevant authority contradicting the District Court's finding that Mr. Ramos' injuries were more than de minimis.

The District Court was therefore correct in finding that Mr. Ramos plausibly pleaded injuries—including restricted breathing, excruciating pain, and hospitalization—that were more than de minimis and that he plausibly stated a claim for excessive force. This court should conclude the same.

B. <u>The Fifth Circuit has clearly established that immediately resorting to overwhelming force to execute an arrest in the face of peaceful behavior and compliance violates the Fourth Amendment.</u>

Defendant-Appellants claim that Mr. Ramos did not cite any law clearly establishing[21] that it is objectively unreasonable to use overwhelming force to arrest a peaceful, compliant person.[22] He did. ROA.192, 311-312. The Fifth Circuit has held that there was no justification for force where "officers lacked reasonable suspicion to detain or frisk the plaintiff," who "was not fleeing." *Trammell*, 868 F.3d at 341. *See also Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) ("[C]learly established law demonstrate[s] that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force . . . with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor [offense]."); *Aguilar v. Robertson*, 512 Fed. App'x 444, 450 (5th Cir. 2013) (unpublished) ("the law is clear that once the plaintiff stops resisting or is in the deputy's control, the permissible degree of force lessens.")

---

[21] Defendant-Appellants incorrectly argue that only the Supreme Court can clearly establish the law. *See* Defendant-Appellants' Original Brief at ECF 54. As evidenced by Defendant-Appellants' own citations, the Supreme Court itself "express[es] no view on that question." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 66 (2018). The Fifth Circuit has repeatedly used non-Supreme Court precedent to clearly establish the law. *See, e.g., Aguirre v. City of San Antonio* 995 F.3d 395, 415 (5th Cir. 2021) ("*[T]his court's* precedents demonstrate that . . . Officers had fair warning that [hogtying a plaintiff] was unconstitutional.") (emphasis added) (internal citations omitted). The Fifth Circuit can—and did—clearly establish that hogtying people is unconstitutional under specific circumstances. Defendant-Appellants' argument fails as a matter of law.
[22] Defendant-Appellants' Original Brief at ECF 54-56

The District Court agreed with the Fifth Circuit, finding that "to assess whether Ramos' injuries from the initial encounter are constitutionally cognizable, the Court must assess whether Irwin and Gilbreath's use of force was objectively unreasonable. Here, all three Graham factors cut in Ramos' favor." ROA.365-366.

Mr. Ramos also pleaded that Irwin and Gilbreath had no lawful basis to tackle him because he was compliant, peaceful, and unsuspicious before the tackle arrest. ROA.10-13. As explained *supra* in Section I.B. of this brief, this Court must disregard Defendants' counterfactual narrative that Mr. Ramos was not. Defendant-Appellants cite several cases to support their claim that the law on this front was not clearly established.[23] All four cases are distinguishable from Mr. Ramos' case, because the plaintiffs in those cases exhibited resistance and non-compliance *before* officers used force on them. *See Tucker v. City of Shreveport* 998 F.3d 165, 178 (5th Cir. 2021); *Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009); *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021); *Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 184 (5th Cir. 2016).

Accordingly, the District Court correctly found that that Defendants' Defendant-Appellants violated clearly established law by immediately resorting to

---

[23] Defendant-Appellants' Original Brief at ECF 53-55

overwhelming force in response to Mr. Ramos' compliance. This Court should conclude the same. The District Court's denial of Defendant-Appellants' motion to dismiss Mr. Ramos' excessive force claim for the tackle arrest should be affirmed.

### IV. Mr. Ramos Plausibly Alleged that the Defendant-Appellants Violated His Clearly Established Right to be free from Excessive Force Via Hogtying.

A. Mr. Ramos' injuries from being hogtied were more than "de minimis."

Defendant-Appellants argue that the injuries they caused Mr. Ramos by hogtying him were "de minimis." As the District Court correctly concluded, Defendant-Appellants' assertion "strains credulity." ROA.368. *See supra* Section I.D. (explaining the erratic breathing, hospitalization, severe bruising, and emotional trauma that Mr. Ramos suffered). Mr. Ramos' restricted, erratic breathing and profuse sweating was symptomatic of positional asphyxia – a condition which is known to be deadly. ROA.15, 17. Mr. Ramos was in such an obviously unhealthy state that several Defendant-Appellants stated, both on the scene and in subsequent reports, that Mr. Ramos was medically fragile. ROA.15-16. The District Court found that "Ramos' injuries were more than *de minimis*, and the force Defendants used was objectively unreasonable." ROA.368

Defendant-Appellants rely on *Zavala v. Harris County, Tex*., 2023 WL 8058711, at *3 (5th Cir. Nov. 21, 2023), but that case is distinguishable for multiple

28

reasons. The hogtying in *Zavala* took place inside of a jail and was therefore analyzed under the Fourteenth Amendment, *Id.* at *1, while Mr. Ramos' case—and all of the case law that Mr. Ramos cited about his injuries—is analyzed under the Fourth Amendment. ROA.19-20. The plaintiff in *Zavala* also pleaded minor scrapes and bruises and was not hospitalized, indicating that her injuries were less significant than Mr. Ramos'. 2023 WL 8058711, at *3. The District Court therefore correctly decided that Mr. Ramos plausibly pleaded injuries that were more than de minimis.

B. <u>The Fifth Circuit has clearly established that hogtying a medically vulnerable person who presents no threat to safety violates the law.</u>

The Fifth Circuit clearly established 25 years ago in *Gutierrez v. City of San Antonio* 139 F.3d 441, 447 (5th Cir. 1998) that hogtying people whom officers believe are drug-affected violates the constitution. *See also Goode v. Baggett*, 811 Fed.App'x. 227, 236 (5th Cir. 2020) ("*Gutierrez* clearly established the unlawfulness of hog-tying in certain circumstances. . . . Our holding in *Gutierrez* addressed the lawfulness of hog-tying a person who is 'drug-affected.'"). In *Goode v. Baggett,* the Fifth Circuit clearly established that "hog-tying a nonviolent, drug-affected person in a state of drug-induced psychosis and placing him in a prone position for an extended period is objectively unreasonable." 811 Fed. App'x. at 237. In 2021, months before the incident at issue here, the Fifth Circuit reaffirmed that the "right to be free from" a "maximal prone restraint position" that was "tantamount to and

as dangerous as a hog-tie"—where plaintiff "was presenting reasons to believe he was on drugs and in a drug-induced psychosis—was clearly established at the time of the incident." *Aguirre*, 995 F.3d at 419–20. The District Court agreed with this Court, finding that "Ramos' right to be free from excessive force was clearly established in this case." ROA.369.

Defendant-Appellants argue that they did not violate clearly established law when they hogtied Mr. Ramos because Mr. Ramos was not medically vulnerable.[24] This contradicts Mr. Ramos' pleadings, which state that Defendant-Appellants made verbal and written statements indicating that they believed Mr. Ramos was under the influence of drugs after Irwin and Gilbreath arrested him but before Morrison, Dago, and Smith hogtied him. ROA.15-16. Further, Mr. Ramos pleaded that he exhibited symptoms of positional asphyxia. ROA.15, 17. The Fifth Circuit therefore clearly established that Defendants' decision to hogtie Mr. Ramos—despite their belief that he was medically vulnerable—violated the Fourth Amendment's prohibition of excessive force.

The Fifth Circuit has also clearly established that "hog-tying [] objectively unreasonable" where "[a]t no point was [the plaintiff] thought to be armed, and he

---

[24] Defendant Appellants' Original Brief at ECF 62-63.

was already handcuffed and subdued." *Goode*, 811 Fed. Appx. at 232 (citing *Trammell*, 868 F.3d at 340). *See also Aguirre*, 995 F.3d at 419–20 (finding a clearly established right to be free from restraint positions where the plaintiff "was not resisting [and] posed no immediate safety threat."). The District Court correctly found that Mr. Ramos did not present a safety threat before Dago, Morrison, and Smith hogtied him. A jury acquitted Mr. Ramos of kicking at Defendant-Appellants (ROA.237-239), and Mr. Ramos notified the District Court of that jury verdict. ROA.234-235. Mr. Ramos pleaded that Defendant-Appellants hogtied him after he was handcuffed, wearing a spit mask, surrounded by 11 officers, and secured in the back of a police car. ROA.14-16. There was no legitimate justification for removing Mr. Ramos from the car to apply further restraints. As explained *supra* in Section I.C., this Court must disregard Defendants' counterfactual narrative about Mr. Ramos presenting a threat[25] and use Mr. Ramos' pleadings to make its legal determination. Because Defendant-Appellants hogtied Mr. Ramos after he posed no threat, they violated his clearly established right to be free from excessive force.

In conclusion, the District Court correctly found that Defendant-Appellants violated clearly established law by hogtying him despite their awareness that he was

---

[25] Defendant-Appellants' Original Brief at ECF 62-64.

medically vulnerable and posed no threat to officers. This Court should conclude the same. The District Court's denial of Defendant-Appellants' motion to dismiss Mr. Ramos' excessive force claim for hogtying should be affirmed.

**CONCLUSION AND PRAYER FOR RELIEF**

For the District reasons stated above, Plaintiff-Appellee asks this Court to affirm the District Court's decision and remand for further proceedings.

Dated: August 21, 2024

/s/ Kiah Duggins
KIAH DUGGINS
BRITTANY N. FRANCIS
CIVIL RIGHTS CORPS
1601 Connecticut Avenue, NW,
Suite 800 Washington, DC 20009
(202)894-6133
kiah@civilrightscorps.org
brittany@civilrightscorps.org
CAITLIN A. HALPERN
GIBBS & BRUNS LLP

1100 Louisiana Street, Suite 5300
Houston, Texas 77002
(713) 650-8805
chalpern@gibbsbruns.com

*Attorneys for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

The foregoing brief has been served via the Court's ECF filing system in compliance

with Federal Rules of Appellate Procedure 25(b) and (c), on August 21, 2024, on all

registered counsel of record and has been transmitted to the Clerk of the Court.


Dated: August 21, 2024


/s/ Kiah Duggins

## CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,809 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2. This brief document complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated: August 21, 2024

/s/ Kiah Duggins