No. 24-20164

___

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

___

ALBERTO RAMOS,

*Plaintiff - Appellee*

v.

SCOTT ERWIN; JENNIFER GILBREATH; HALLIE SMITH;
FREDERICK MORRISON; GINO DAGO,

*Defendants - Appellants*

___

On appeal from Civil Action No. 4:23-CV-02517 in the United States District Court for the Southern District of Texas, Houston Division

___

**Reply Brief of Appellants**

___

| | |
|---|---|
| ARTURO G. MICHEL<br>City Attorney | Robert W. Higgason<br>Senior Assistant City Attorney<br>SBN: 09590800 |
| SUZANNE R. CHAUVIN<br>Chief, General Litigation Section | CITY OF HOUSTON LEGAL DEPARTMENT<br>900 Bagby, 4th Floor<br>Houston, Texas 77002<br>Telephone: 832.393.6481<br>Facsimile:  832.393.6259<br>robert.higgason@houstontx.gov |
| | *Attorneys for Defendants - Appellants* |

## Table of Contents

                                                               **Page**

Table of Authorities ................................................................................................... iii

Argument and Authorities in Reply ............................................................................ 1

I.    *Heck* Bar .......................................................................................................... 1

II.   False Arrest ..................................................................................................... 2

       A.    Independent Intermediary ......................................................................... 3

       B.    Qualified Immunity for Irwin and Gilbreath as to false arrest claim. ..................................................................................................... 5

III.  Qualified Immunity for Irwin and Gilbreath as to excessive force "tackling" claim. ............................................................................................. 5

IV.  Qualified Immunity for Dago, Smith, and Morrison as to excessive force for "hogtying" claim. ............................................................................. 8

       A.    Dago, Smith and Morrison did not use force that was clearly excessive to the need. ............................................................................... 8

       B.    Ramos pled no actual facts about his injuries he alleges from the hogtying other than bruising and momentary trouble breath ...................................................................................................... 9

       C.    Ramos still identified no clearly-established law. ....................... 11

Prayer for Relief ....................................................................................................... 12

Certificate of Service ............................................................................................... 14

Certificate of Compliance ........................................................................................ 14

## Table of Authorities

Page(s)

**Cases**

*Aucoin v. Cupil*,
  958 F.3d 379 (5th Cir. 2020) ................................................................... 1

*Brown v. Lyford*,
  243 F.3d 185 (5th Cir. 2001) ................................................................... 3

*County of Los Angeles, Cal. v. Mendez*,
  137 S. Ct. 1539 (2017)............................................................................. 6

*Cuadra v. Houston Indep. Sch. Dist.*,
  626 F.3d 808 (5th Cir. 2010) ................................................................... 2

*DeLeon v. City of Corpus Christi*,
  488 F.3d 649 (5th Cir. 2007) ............................................................... 1, 2

*Deville v. Marcantel*,
  567 F.3d 156 (5th Cir. 2009) ................................................................... 3

*Espinal v. City of Houston*,
  96 F.4th 741 (5th Cir. 2024) .................................................................... 4

*Goode v. Baggett*,
  811 F. App'x 227 (5th Cir. 2020)........................................................... 12

*Khan v. Normand*,
  683 F.3d 192 (5th Cir. 2012) ................................................................... 8

*Lee v. Ard*,
  785 F. App'x 247 (5th Cir. 2019)............................................................. 1

*Poole v. City of Shreveport*,
  691 F.3d 624 (5th Cir. 2012) ................................................................... 6

*Pratt v. Harris County, Tex.*,
  822 F.3d 174 (5th Cir. 2016) ................................................................... 8

*Zavala v. Harris County, Tex.*,
  No. 22-20611, 2023 WL 8058711 (5th Cir. Nov. 21, 2023)
  (unpublished) (per curiam) ................................................................. 10

To the Honorable Fifth Circuit Court of Appeals:

## Argument and Authorities in Reply

### I.   *Heck* Bar

Appellants' opening brief demonstrated that if a plaintiff's claim stems from "a single violent encounter," then his conviction bars recovery. *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656-57 (5th Cir. 2007). And when a plaintiff's claim is based solely on his assertions that he did nothing wrong, and was attacked by the officers for no reason, that suit squarely challenges the factual determination that underlies his conviction and is necessarily at odds with the conviction. *Aucoin v. Cupil*, 958 F.3d 379, 383 (5th Cir. 2020).

Such is the case here. Ramos's claim is based solely on his assertions that he did nothing wrong and was attacked by the officers for no reason. Indeed, in his brief, Ramos asserts that he "displayed no suspicious, violent, or oppositional behavior before Defendant-Appellants Irwin and Gilbreath tackled and arrested him" and was merely "walking peacefully down a public sidewalk". Appellee's br. at 13. As such, his suit necessarily undermines his conviction. *See Aucoin*, 958 F.3d at 383; *Lee v. Ard*, 785 F. App'x 247, 249 (5th Cir. 2019) ("An assertion in a Section 1983 suit that a person is innocent of the conduct that underlies his extant conviction leaves no place for a temporal division between

the initial resistance supporting the conviction and the officer's later use of excessive force.")

Nevertheless, Ramos argues in his brief that because his convictions do not stem from the underlying 911 call, his suit is not *Heck* barred. Appellees' br. at 17-18. Ramos cites no authority to support this argument. And Ramos does not refute that this incident is a "single violent encounter" consistent with *DeLeon.* 488 F.3d at 656-57. *See also Hoyle v. City of Hernando*, No. 23-60451, 2024 WL 4039746 at *3-4 (5th Cir. Sep. 4, 2024) (discussing *Heck* bar as to plaintiff's argument that "his excessive-force claim and his felony-fleeing conviction are 'temporally and conceptually distinct[,]'" and affirming dismissal on alternate ground of district court's holding that there was no constitutional violation).

And although Ramos argues that he was acquitted of two of the charges, he ignores that he was adjudged guilty of one. *See* Appellees' br. at 18. Accordingly, he cannot meet his burden to plead favorable termination. His suit is *Heck*-barred.

## II.  False Arrest

As Appellants demonstrated in their opening brief, lack of probable cause is an essential element for a false arrest claim. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *Deville v. Marcantel*, 567 F.3d 156, 164 (5th

Cir. 2009); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). And if there was probable cause for *any* of the charges made, the arrest was supported by probable cause, and the claim for false arrest fails. *Deville*, 567 F.3d at 164.

The well-pled allegations and judicially-noticed facts establish that there were six probable cause findings, three indictments, and one criminal conviction stemming from Ramos' interaction with officers during this event. ROA.78-96, ROA.241. Ramos' false arrest claim starts and ends with these facts. Because probable cause—and ultimately proof beyond a reasonable doubt—existed for *at least one* of the charges, Ramos's false arrest claim must fail.

Ramos's brief ignores this authority and continues to split hairs regarding the sequence of events to avoid the *Heck* bar and independent intermediary doctrine. Ramos's strategy is self-defeating to his excessive force claims; if, as Ramos contends, he was "arrested" the moment that Irwin "tackled" him, and he nevertheless kicked and spit on officers despite being in handcuffs, he was neither restrained nor subdued and the officers' measured and ascending force was objectively reasonable.

### A.  Independent Intermediary

As Appellants explained in their opening brief, the facts associated with Ramos' arrest were presented to an independent intermediary, which breaks the chain of causation for false arrest and insulates Appellants from Ramos' claims.

*See Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024). Here it is unrefuted that there were six probable cause findings, including three grand jury indictments. ROA.78-96, ROA.241. In the absence of any allegations in Ramos' complaint that the officers tainted ***all six*** probable cause findings, Ramos cannot overcome the independent intermediary doctrine. *See* Appellants' br. at 31.

Ramos ignores all this authority. Instead, once again splitting hairs, Ramos argues that no independent intermediary found that probable cause existed when Irwin "tackled" him and Gilbreath "sat on him." *See* Appellee's br. at 19. This temporal distinction is immaterial for two reasons.

First, as discussed in Appellants' opening brief, Ramos was not necessarily "arrested" when Irwin and Gilbreath initially encountered him; he was merely "detained" which requires only reasonable suspicion, not probable cause. *See* Appellant's br. at 32.

Second, even when an officer arrests a suspect without probable cause, the independent intermediary doctrine shields him from liability if a grand jury subsequently indicts the suspect. *Espinal*, 96 F.4th at 745. Ramos was indicted by a grand jury on three different charges. ROA.78-96, ROA.241. That is the beginning and end of the analysis. *Espinal*, 96 F.4th at 745.

The independent intermediary doctrine shields Irwin and Gilbreath from Ramos's false arrest claim.

> **B.   Qualified Immunity for Irwin and Gilbreath as to false arrest claim.**

Irwin and Gilbreath argued they were entitled qualified immunity as to Ramos's claim for false arrest. *See* Appellants' br. at 36.

Ramos responds with authority that is limited to cases addressing reasonable suspicion for a *Terry* stop. *Id.* at 20-21. Ramos cited no authority holding that officers violated clearly-established law because they lacked probable cause to arrest a suspect, when that suspect was later indicted on three charges stemming from the same violent encounter and ultimately convicted of one. Ramos cannot overcome Irwin and Gilbreath's qualified immunity on these facts.

**III.   Qualified Immunity for Irwin and Gilbreath as to excessive force "tackling" claim.**

As Irwin and Gilbreath argued in Appellants' opening brief, Ramos identified no injuries that were causally connected to the Irwin "tackling" him or Gilbreath "sitting on him". *See* Appellants' br. at 36. And the injuries he identified from this incident as a whole were merely *de minimis*. Appellants' br. at 36.

Ramos responds "this counter-factual contradicts Mr. Ramos' detailed pleadings describing the injuries, physical pain, and emotional distress he suffered". Appellee's br. at 24. But Ramos never cites to any portion of his

5

complaint where he describes what those more-than-*de-minimis* injuries were or how they were causally connected to actions of Irwin and Gilbreath. *See* Appellee's br. at 16, 24.

The fact of the matter is that while Ramos alleged two different theories of excessive force, Ramos only pled a single vague set of injuries. But this kind of pleading cannot overcome qualified immunity where each officer's actions must be evaluated separately to the extent possible. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

To circumvent this problem, Ramos bootstraps his excessive force claim to his false arrest claim, asserting that because officers lacked probable cause, ***any*** force was necessarily unreasonable. *See* Appellee's br. at 27. But these distinct claims must be considered separately; as Appellants noted in their opening brief, the U.S. Supreme Court has rejected the provocation doctrine and held that an otherwise reasonable use of force is not made unreasonable due to some other constitutional violation. *County of Los Angeles, Cal. v. Mendez*, 137 S. Ct. 1539, 1546 (2017) ("The provocation rule, which has been 'sharply questioned' outside the Ninth Circuit, is incompatible with our excessive force jurisprudence. The rule's fundamental flaw is that it uses another constitutional violation to manufacture an excessive force claim where one would not

otherwise exist.") (citation omitted). And in any event, as discussed in section II above, probable cause was found to exist here.

As to Irwin, Ramos still recites no authority clearly establishing a constitutional violation where an officer was engaged in a take-down of a suspect who had already disregarded officer instructions, which is exactly what Ramos alleged: Irwin asked Ramos to "tell his side of the story" but Ramos did not comply and instead initially kept moving away from Irwin because did not understand what "story" Defendant Irwin was talking about. ROA.12. Then when Irwin commanded him to stop moving away from him, he complied. ROA.12.

Ramos argues that the authority Irwin provided is distinguishable from Mr. Ramos' case, because the plaintiffs in those cases exhibited resistance and non-compliance *before* officers used force on them. *See* Appellee's br. at 27. But that is exactly what Ramos pled here, though Ramos tries to justify his non-compliance through lack of understanding. Qualified immunity is judged from the perspective of the officer; Irwin could not have known that the reason Ramos did not stop and give his side of the story was "he did not understand". From the facts that Ramos pled, Irwin only knew that Ramos did not comply with Irwin's commands. Ramos provided no authority holding a clearly-established constitutional violation on similar facts.

The same reasoning applies to Gilbreath. Ramos cited no clearly-established law prohibiting an officer from sitting on a suspect who appears to be in a struggle and resisting a fellow officer's attempt to apply handcuffs. Even if Gilbreath sat on Ramos by mistake because she misjudged the scene when she arrived, qualified immunity still applies.

**IV. Qualified Immunity for Dago, Smith, and Morrison as to excessive force for "hogtying" claim.**

Hogtying in itself is not unconstitutional. *See, e.g.*, *Pratt v. Harris County, Tex.*, 822 F.3d 174, 184 (5th Cir. 2016) ("[A]n assertion of hog-tying alone does not constitute a claim of excessive force.... Thus, in the factual context of this case, the use of the hog-tie restraint was not unconstitutionally excessive, or unreasonable."); *Khan v. Normand*, 683 F.3d 192, 1967 (5th Cir. 2012) (use of hogtying was not a constitutional violation; affirming qualified immunity for officers). Ramos has not cited any cases showing that that clearly established law would prevent the use of hogtying in this instance.

**A. Dago, Smith and Morrison did not use force that was clearly excessive to the need.**

Dago, Smith, and Morrison argued in Appellants' opening brief that they were entitled to qualified immunity because no clearly established law prohibited hog-tying in circumstances where Ramos expressly admitted:

8

> All of the offenses that Mr. Ramos was ultimately charged with—one count of harassing a public servant for allegedly spitting at Defendant Gilbreath, and two counts of assaulting a public servant for allegedly kicking Defendants Morrison and Smith—were based on behaviors that he allegedly engaged in after he was already tackled, cuffed, and arrested.

ROA.307. In other words, by Ramos' own admission—despite being handcuffed—Ramos was not subdued. ROA.326-27. Under such circumstances, applying foot restraints and a spit mask would be objectively reasonable. Ramos does not address this argument other than to ask the Court to disregard it as "counterfactual narrative." *See* Appellee's br. at 31.

### B. Ramos pled no actual facts about his injuries he alleges from the hogtying other than bruising and momentary trouble breath

As Dago, Smith, and Morrison argued in their opening brief, Ramos' allegations were limited to the allegations that he "had trouble breathing while hogtied" and that he was "severely bruised and injured as a result of Defendants hogtying him." ROA.17. *See* Appellants' br. at 40-41.

Ramos disagreed, but never indicated what those injuries were. ROA.194. Ramos's brief still does not identify where in the complaint he alleged with specificity what his non-*de-minimis* injuries from hog-tying were. Appellee's br. at 28. Ramos now characterizes the allegations in his complaint as "symptoms of positional asphyxia, which included restricted, labored, and irregular breathing" and "profuse sweating". Appellee's br. at 16, 28. His complaint

9

alleged no such thing; nor did he connect his sweating or difficulty breathing in any way with positional asphyxia or any other serious injury. *Zavala v. Harris County, Tex.*, No. 22-20611, 2023 WL 8058711, at *3 (5th Cir. Nov. 21, 2023) (unpublished) (per curiam) ("Zavala does not allege any severe injuries, nor does she contend that she was at risk of death from the hog-tie restraint. Her main complaints are that she was denied water while restrained, suffered minor scrapes and bruises, and has mental health issues from the incident.").

To the contrary, in his Complaint he alleged that the sweating and labored breathing were due to his emotional delirium—which he alleged he experienced before leg restraints were applied. ROA.15. Similarly, screaming in pain is not "an injury"—it's just screaming, which Ramos alleged he was doing in equal measure before leg restraints were applied. ROA.15 (describing Ramos' "extreme emotional distress" which included "crying loudly for help, asking questions in confusion, and making nonsensical statements in both Spanish and English"). And though Ramos alleges he was hospitalized, Ramos's complaint pled no *facts* from which the Court could plausibly infer this hospitalization was from injuries he suffered as a result of the hog-tying, rather than the overdose he was likely experiencing. ROA.17, ROA.19.

Ramos has therefore pled insufficient facts to suggest that the force used was clearly excessive to the need such that he suffered any non-*de-minimis* injury that would give rise to a constitutional deprivation.

### C. Ramos still identified no clearly-established law.

Dago, Smith, and Morrison argued in their opening brief that there is no materially-similar precedent because Ramos does not allege positional asphyxia. *See* Appellant's br. at 45. Indeed, these appellants argued that at most, precedent precludes the ***combination of*** drug use, hog-tying, being placed in a prone position for an extended period of time, and ***positional asphyxia***. *See* Appellants' br. at 46. Where Ramos pled no facts to suggest he was left in the prone position for an extended period of time and made no allegations of suffering positional asphyxia, no clearly established law overcomes Dago, Smith, and Morrison's qualified immunity here. *See* Appellants' br. at 46-47.

In response to appellants' arguments, for the first time Ramos now characterizes his allegations of restricted, erratic breathing and profuse sweating as "symptoms of positional asphyxia." *See* Appellee's br. at 28. As discussed in section IV.B. above, his complaint alleges no such thing, stating merely "Mr. Ramos had trouble breathing while hogtied." ROA.17.

But Ramos still cannot overcome the fact that his complaint is wholly devoid of factual allegations to suggest that he remained in prone position for an *extended period of time*. Appellee's br. at 30. Indeed, Ramos relies on *Goode v. Baggett*, 811 F. App'x 227, 236 (5th Cir. 2020) for the proposition that hog-tying a nonviolent, drug-affected person in a state of drug-induced psychosis *and placing him in a prone position for an extended period* is objectively unreasonable." *See* Appellee's br. at 29 (emphasis added). It is the "*and placing him in a prone position for an extended period*" that is missing in this case. For this reason alone, Ramos has presented no clearly-established law from which an officer—in the blink of an eye—would have known that applying leg restrains was objectively unreasonable in light of Ramos' admission that he was indicted for kicking and spitting on officers *after* being placed in handcuffs.

Ramos's allegations do not overcome Dago, Smith, & Morrison's qualified immunity. This Court should reverse and render.

## Prayer for Relief

The problem in this case is the Ramos split his hairs so finely that he lost sight of the bigger picture. Ramos has argued that he kicked and spat at officers even after being placed in handcuffs to avoid dismissal of his false arrest claim, but in so doing has sacrificed his excessive force claims. For the foregoing

12

reasons, Appellants, Scott Irwin, Jennifer Gilbreath, Hallie Smith, Frederick Morrison, and Gino Dago, ask that this Court reverse the trial court's order and render judgment dismissing Ramos's case, and grant to them all other relief to which they may be entitled.

        Respectfully submitted,

        ARTURO G. MICHEL
        City Attorney
        SUZANNE R. CHAUVIN
        Chief, General Litigation Section

        By:   */s / Robert W. Higgason*
            Robert W. Higgason
            Senior Assistant City Attorney
            SBN: 09590800
            Christy L. Martin
            Chief, Torts/Civil Rights Section
            SBN: 24041336
            CITY OF HOUSTON LEGAL DEPARTMENT
            900 Bagby, 4th Floor
            Houston, Texas 77002
            Telephone:   832.393.6481
            Facsimile:    832.393.6259
            robert.higgason@houstontx.gov

        *Attorneys for Defendants – Appellants*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on September 11, 2024 on all counsel of record.

>  */s/ Robert W. Higgason*
> Robert W. Higgason

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(g)(1) and 27(d)(2)(a) in that it contains 2,633 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Calisto MT 14 point font.

>  */s/ Robert W. Higgason*
> Robert W. Higgason